CHAUNCEY K. DOUGLAS, as Administrator, etc., of IDA M. DOUGLAS, Deceased, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 23913.)

CHAUNCEY K. DOUGLAS, as Administrator, etc., of MALCOLM DOUGLAS, Deceased, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 23914.)

BEATRICE GUTBRODT, as Administratrix, etc., of FRANK E. GUTBRODT, Deceased, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 23955.)

Third Department, June 22, 1938.

*Edward J. Donohue* and *William F. Donohue,* for Chauncey K. Douglas, as administrator, etc.; *John P. Weatherwax,* for Beatrice Gutbrodt, as administratrix, etc. [*Thomas J. O'Connor* of counsel], for the appellants.

*John J. Bennett, Jr., Attorney-General [Owen M. Begley, Assistant Attorney-General, of counsel; Leon M. Layden, Assistant Attorney-General, with him on the brief], for the respondent.*

HILL, P. J.  Appeals by three administrators from judgments of the Court of Claims.  The claims, filed under section 12-a of the Court of Claims Act, for damages arising from the death of three intestates, allege negligence of State officers and employees for failure to exercise reasonable and proper care in the repair and maintenance of the westerly guard rail of Spook Hollow bridge which is on the highway in the county of Rensselaer between the hamlet of Melrose and the village of Schaghticoke.

Chauncey K. Douglas was driving north along this highway in a one and a half ton Ford truck loaded with lumber, accompanied by three of his children, one the decedent Malcolm Douglas, his wife the decedent Ida M. Douglas and the decedent Frank Gutbrodt.  While he was on the roadway of the bridge, which .was 210 feet in length and about 50 feet above the Boston and Maine railroad tracks, smoke and steam given off by a train passing underneath obscured his vision, and he came in collision with an automobile which was being driven southerly.  As a result of the collision his truck, which had been proceeding slowly at ten or fifteen miles an hour, went across the roadway, through the railing on the westerly side of the bridge and fell to the tracks below, causing the death of three of his passengers.  The bridge had been constructed for about thirty years and the roadway maintained by the railroad company for at least seventeen years.  Wooden railings had been erected along each side of the bridge consisting of three and five-eighths inch by five and five-eighths inch uprights bolted to the bridge at intervals of four feet; to which two by eight inch planks were attached by bolts.  The uprights which gave way when the truck struck them had lost nine-tenths of their strength through decay and deterioration caused by age and exposure to the weather.  The northern terminal of State highway No. 477 is the southerly end of this bridge.  State highway No. 1843 begins at and proceeds northerly from the north end of the bridge.

Appellants assert liability on behalf of the State under the last sentence of section 93 of the Railroad Law, which reads: " Where the roadway over a railroad, or the subway underneath the same, or the approaches thereto have been improved by the State as a part of a State or county highway, such roadway or subway, or approaches only, as have been so improved shall thereafter be maintained and kept in repair by the Superintendent of Public Works in the manner provided in the Highway Law for the maintenance and repair of State and county highways."

The State had built improved highways to the termini of the bridge, but the only improvement shown to have been made by the State upon the bridge structure was to apply white paint to four feet of the rails at each end of the bridge. As the roadway at either end of the bridge is curved, the painting of the railings was to give warning to approaching travelers and had no more significance than covering a projecting rock or a tree with white paint. In 1932 a State highway maintenance foreman had erected at either end of the bridge signs containing the legend " Warning, six tons safe load." These signs were obtained from the State highway storehouse at Waterford. Their erection was not such an improvement of the bridge as to bring it within the purview of section 93 of the Railroad Law, a portion of which is quoted above. Under section 12-a (Court of Claims Act) the State assumes liability for negligence only to the extent that a private person or corporation is liable. A warning sign as to a dangerous and unsafe condition erected by a private person or corporation would not amount to an assumption of liability for the condition. In *James* v. *D., L. & W. R. R. Co.* (233 App. Div. 617; 259 N. Y. 609) the State had improved the roadway of the bridge but a recovery against the county was permitted because of its affirmative negligence in removing a part of the railing and in replacing it in a negligent and careless manner. A judgment against the town was reversed as the accident happened on September twenty-sixth, during that part of the year when the State is liable for damages arising from defects in State highways (Highway Law, § 58 ), while this accident happened on March sixteenth, when the State is not liable for damages and at which time " liability for such damages shall otherwise remain as now provided by law, notwithstanding the construction or improvement and maintenance of such highways by the State under this chapter."

Section 93 of the Railroad Law provides in substance, in addition to the portion quoted above, that the framework of an overhead bridge by which a highway crosses over a railroad, shall be maintained by the railroad and that the roadway and approaches shall be maintained by the municipality " having jurisdiction over and in which the same are situated unless such municipality shall be a village of less than twelve hundred inhabitants," in which case under certain conditions and after approval by the town board, the town is to maintain the bridge.

The building of improved highways by the State to the banks of a stream or ravine places no legal or even moral obligation upon it to build a bridge, unless the Legislature has so provided. (*Ausable*

*Chasm Co.* v. *State of New York,* 266 N. Y. 326.) The implied invitation to the public by the State to use the Spook Hollow bridge which was extended by the construction of highways to each end, gives rise to no legal or moral obligation to maintain the bridge in a safe condition unless the Legislature has so enacted. As the Legislature has not so enacted, under the facts in this case the legal responsibility for the maintenance of the bridge does not rest upon the State of New York.

The judgments should be affirmed.

RHODES, CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Judgments affirmed, without costs.