JOHN BARNA, as Administrator of the Estate of PAULINE S. BARNA, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 24069.)

CATHERINE G. MACKEN, as Administratrix of the Estate of HUGH A. MACKEN, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 24070.)

Court of Claims, September 25, 1942.

*John J. Conway* for claimants.

*John J. Bennett, Jr., Attorney-General* (*Owen M. Begley* and *Moses L. Kove* of counsel), for defendant.

DYE, J. The claimants' decedents were occupants of an automobile that plunged through the wooden railing of Spook Hollow bridge and fell approximately fifty feet to the ground below. The bridge, erected prior to 1897, spanned the Boston and Maine Railroad right of way and separated the northerly terminal of State Highway No. 477, and the southerly terminal of State Highway No. 1843, which was also the southerly boundary of the village of Schaghticoke, Rensselaer county.

In *Douglas* v. *State of New York* (254 App. Div. 392) it was held that the State was not liable for the maintenance and repair of the Spook Hollow bridge, citing as authority, section 93 of the Railroad Law and *Ausable Chasm Co.* v. *State of New York* (266 N. Y. 326).

The force and effect of this decision is sought to be distinguished and limited by the claimants on the theory that the State being under the duty to maintain its highway in a reasonably safe condition for travel was negligent in that it failed to warn users of highway No. 1843 of the hazardous condition of the bridge connecting its highway termini, of which it had knowledge, by reason of:

(a) An allegedly slippery condition of certain creosote-treated planking recently installed on the floor of the bridge at its northerly terminal with Route 1843;

(b) The insecurity of the wooden railing and supports that were weak from deterioration and decay;

(c) The fact that the bridge floor between the railings was approximately 2 feet 2½ inches narrower than the adjoining concrete portion of highway No. 1843, and

(d) An allegedly slippery condition caused by the bleeding of a patch of bituminous material called "amesite." This patch had been placed by the employees of the State for "our own convenience" to absorb the irregularity caused by the slightly higher level of the new planking on the bridge floor and the adjoining concrete.

The claimants proceed on the theory that the automobile skidded out of control when it came on the bridge; that the proximate and producing cause of the skid was the residue of the bleeding amesite patch tracked onto the flooring of the bridge, mixed with the creosote which had "dripped upward" due to its exposure to the hot rays of the sun.

In view of the *Douglas* decision, (*supra*), the amesite becomes the nub of the present controversy. The testimony as to its bleeding is not convincing. In fact, the preponderance is that it did not bleed, for once placed, it was ready and safe for use without the addition of further materials. Nor is the testimony of the experts as to its composition and character sufficient to overcome the observation of witnesses. Neither is there any evidence that the death car skidded, nor were physical conditions shown from which the fact of a skid could be deduced. The tracks entered the bridge astride its center line, continued along, turned diagonally to the right and proceeded through the hole in the guard rail. None of the characteristics of a skid mark were testified to by any witness and the conclusion, if any can be drawn from the normalcy of the track mark, is that the accident happened solely because of the inexperience of the driver of the death car, although licensed, who became confused when confronted with the proximity of an approaching car. The death car had entered the bridge at a speed greatly in excess of the village speed limit, was not on its proper side of the road, and when it turned to avoid a head-on collision, the distance was misjudged, and before it could be controlled, had plunged through the railing.

It was this circumstance, rather than any neglect or misfeasance on the part of the State that was the proximate producing cause of the accident.

The testimony concerning the physical condition of the bridge structure, received over the objection of the Attorney-General, based on the *Douglas* case, (*supra*), has been given only so much weight as necessary to afford a complete picture of the happening of the event, which in view of the result reached, has not prejudiced the State. As the ruling in the *Douglas* case, (*supra*), is deemed controlling on the question of bridge maintenance and repair, the burden of proof of the existence of a duty on the State in this respect rested with the claimants.

Under the circumstances, it was not for the State to disprove its responsibility for maintenance and repair, nor to prove the obligatory duty of the railroad as a part of its affirmative defense. The burden of affirmative proof throughout rested with the claimants, except as to the contributory negligence of the decedent.

The claims not having been established by a fair preponderance of all the evidence must, therefore, be dismissed on the merits.

Let judgment be entered accordingly.