JOHN BARNA, as Administrator of the Estate of PAULINE S. BARNA, Deceased, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 24069.)

CATHERINE G. MACKEN, as Administratrix of the Estate of HUGH A. MACKEN, Deceased, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 24070.)

Third Department, December 28, 1943.

262

*Barkhuff & Conway,* attorneys (*John J. Conway* of counsel), for claimants-appellants.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Arthur W. Mattson, Assistant Attorney-General,* and *Adrian K. King, Deputy Assistant Attorney-General,* of counsel), for respondent.

BLISS, J. In August, 1934, State highway No. 1843 ran south through the village of Schaghticoke, Rensselaer County, and terminated at the northerly end of the Spook Hollow bridge which carried the highway traffic over the tracks of the Boston and Maine Railroad. State highway No. 477 began at the other end of the bridge and proceeded on south through Melrose to Troy. The bridge itself was constructed by the railroad some time prior to 1897 and is still maintained by it. State maintenance of the highways began at each end of the bridge, which was a steel structure 210 feet long with a plank roadway and wooden plank guardrails on each side supported by upright wooden posts bolted to the sides of the bridge. The posts which supported the westerly rails of the bridge were rotted and the rail was "wobbly." Its floor was about 50 feet above the railway tracks and had a clear width of 17 feet 10½ inches for vehicles. The northerly end had recently been replanked with new planks treated with creosote which on the day of the accident

was somewhat soft, tacky and slippery. The pavement of State highway No. 1843 consisted of two strips of concrete each 10 feet in width which ended at the bridge and which had been covered by the State highway maintenance employees with a thin coat of bituminous material for 13 feet north of the bridge. This highway was straight through Schaghticoke for a distance of at least 1,200 feet until it approached the northerly end of the bridge where there were a down grade and compound curve terminating at the bridge. This grade varied from 2.7 per cent to 4.3 per cent and the curve from 8 degrees for the first 60 feet to 28 degrees just north of the bridge. The latter was described by a civil engineer as '' a very sharp curve.'' The concrete pavement on the curve was banked 7 or 8 inches on the outside. On the westerly side of the highway at the northerly end of the bridge, was the usual State highway guardrail of two cables supported by seven concrete posts and fastened to the northerly end of the wooden railing of the bridge. Outside of this guardrail 9 feet from the northerly end of the bridge was a reflector sign designed to reflect an automobile's headlights in red at night. About 14 feet north of that was a square board sign containing the legend '' Warning 6 tons safe load '', while 232 feet farther north was a small State highway '' slow '' sign. These were all of the signs on the westerly side of the road.

On the afternoon of August 3, 1934, plaintiffs' intestates, Pauline Barna and Hugh Macken, were riding southerly through the village of Schaghticoke in Macken's automobile with Miss Barna at the wheel. As they approached this bridge at from 30 to 35 miles an hour a car came northerly across it. It stayed on its own side and hugged the right railing so closely that its right fender scraped the planking. The Macken car entered the bridge approximately in the center of the roadway and then veered toward the right. The two cars met about 3 feet from the north end of the bridge, and passed without contact and as the car from the north went out of the other driver's vision there was a crash. The southbound car had gone through the wooden guardrail on the westerly side of the bridge a short distance from the northerly end and plunged into the hollow below. Both of its occupants were killed. There was considerable testimony as to the exuding of the bituminous material from the patch on the highway and the creosote on the bridge and whether or not it was slippery and one of the causes of the accident. The decision of the Court of Claims apparently turned on this point. We do not think that this was the controlling factor in the case.

There was no duty on the part of the State to maintain the bridge itself. Nevertheless that did not excuse its failure adequately to warn southbound travelers of the down grade, sharp compound curve, narrow bridge, rotten railing, deep gorge and slippery condition of the highway and bridge floor, all of which united to create a situation fraught with danger where the slightest miscalculation as to speed or distance or error of judgment on the part of a driver was prone to have fatal results.

Nothing told Miss Barna of this peril. The small " slow " sign was wholly inadequate to warn these travelers that they were approaching such a hazardous spot. There were no " curve ", " danger " or " narrow bridge " signs. Thirty or thirty-five miles an hour on a concrete State highway was not an unreasonable speed at which to proceed past a " slow " sign in prewar days. The risks of this curve and narrow bridge were augmented by the other car just coming off the bridge and we cannot say that this young lady was guilty of negligence in her effort to avoid a collision on the bridge. The negligence of the State in its failure to warn of these dangers was a proximate cause of this accident. The slippery condition of the bituminous patch and creosoted floor on this warm day may have been factors but unquestionably more adequate warning would have resulted in a slower speed and a quicker realization of the dangers ahead. In addition, the State had constructed the highway on the curve and down grade, thus participating in the creation of the danger.

The State had notice that this was a dangerous bridge. A few months earlier another car had gone off the bridge to the railroad tracks below and its three occupants were killed. (See *Douglas* v. *State of New York,* 254 App. Div. 392, leave to appeal denied, 279 N. Y. 809.)

The State places considerable reliance upon the case of *Sturman* v. *State of New York* (244 App. Div. 865, affd. 269 N. Y. 627). That situation was quite different. There were several warning signs much larger and far more emphatic than the single, small " slow " sign in this case. That accident happened at night when a red reflector hazard sign would be effective.

Miss Barna was twenty-six years of age, single and lived with her father, mother, brother and a sister. She was a Civil Service employee in the State Department of Health where she had been employed for eight years. She was earning $1,320 a year, all of which she contributed toward the maintenance of the home and family. Hugh Macken was twenty-five

years of age, single and lived with his mother, one brother and one sister. He, too, was a State Civil Service employee, having been employed in the State Department of Health for several years. He was earning $2,000 a year and contributed twenty dollars per week to the support of his mother. He had taken extension courses at Columbia University and other places and apparently was making serious efforts to obtain promotion. Both of these young people were in good health. Awards of $15,000 in the *Barna* case and $20,000 in the *Macken* case appear reasonable.

The judgments appealed from should be reversed on the law and facts, new findings made and judgments of $15,000 and $20,000, respectively, directed for the claimants.

All concur, except CRAPSER, J., who dissents and votes to affirm.

Judgments reversed on the law and facts and judgments of $15,750, and interest, and $20,725, and interest, respectively, directed, with one bill of costs.

Claim of John Barna, as administrator, No. 24069.

The court reverses the following findings of fact contained in State's findings of fact and conclusions of law: 10, 12, 13, 15, 16 and 17, and all facts found in the conclusions of law. Reverses the following findings of fact in the decision: 13, the last sentence of 17, 18, 19, 22, 23, 25 and 26. Disapproves the following conclusions of law: I, III, IV and V of State's findings and conclusions and II, IV, V, VI and VII of the decision. Makes the following findings of fact: 5, 7 except as to Pauline Barna being a passenger in said automobile, 23, 24, 25, 36, 48, 51, 52, 53, 55, 56, 57, 58, 61, 70, 71, 72, 73, 74, 75, 76, 77, 78, 81 and 82 except that the amount is $15,750 instead of $50,000, of claimant's proposed findings of fact. Makes as findings of fact the following proposed conclusions of law contained in claimant's proposed findings of fact and conclusions of law: 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13. Makes the following conclusions of law contained in claimant's proposed findings of fact and conclusions of law: 26, except that the amount is $15,750. Finds and concludes as follows: 1. That the automobile in which claimant's intestate was riding was operated in a careful and prudent manner, that she was free from negligence contributing to the accident, that the State was guilty of negligence which caused the accident and that claimant is entitled to judgment against defendant for $15,750, with interest from August 3, 1934, at the rates allowed by law.

Claim of Catherine G. Macken, as administratrix, No. 24,070.

The court reverses the following findings of fact contained in State's findings of fact and conclusions of law: 10, 12, 13, 14, 15, 16 and 17, and all facts found in the conclusions of law thereof. Reverses the following findings of fact contained in the decision: 7 as to the hour of the accident, 13, the last sentence of 17, 18, 19, 22, 23, 26 and 27. Disapproves the following conclusions of law: I, III, IV and V of State's findings of fact and conclusions of law and II, IV, V, VI and VII of the decision. Makes the following findings of fact: 6 except as to Pauline S. Barna being a passenger in said automobile, 22, 23, 24, 30, 35, 47, 50, 51, 52, 54, 55, 56, 57, 60, 69, 70, 71, 72, 73, 74, 75, 76, 77, 81 and 82 except that the amount is $20,725, instead of $50,000, of claimant's proposed findings of fact. Makes as findings of fact the following proposed conclusions of law contained in claimant's proposed findings of fact and conclusions of law: 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13. Makes the following conclusions of law contained in claimant's proposed findings of fact and conclusions of law: 26 except that the amount is $20,725. Finds and concludes as follows: 1. That the automobile in which claimant's intestate was riding was operated in a careful and prudent manner, that he and the driver of said car were free from negligence contributing to the accident; that the State was guilty of negligence which caused the accident and claimant is entitled to judgment against defendant for $20,725, with interest from August 3, 1934, at the rates allowed by law.