JOSEPH JULIANO, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27988.)

Court of Claims, June 18, 1947.

*Abraham Kopald* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Frank M. Noonan* of counsel), for defendant.

LAMBIASE, J. Claimant sues to recover for damage sustained to his automobile in the early morning of March 24, 1944, when said automobile, while being driven upon New York State Highway Route 9W, also known as Storm King By-Pass, in the town of Cornwall, Orange County, New York, by his son with his

consent and permission, collided with a quantity of earth and rock which had slipped or fallen from an embankment on the west side of said highway and on the traveled portion thereof obstructing it.

It is claimed (a) " * * * that the rocks and cliffs and earth cuts on the west side of said public highway were so negligently constructed and maintained that they were permitted to fall on to the west side of the pavement of the said highway and particularly failing to construct the said highway, the pavement, the abutting cliffs and rock and earth cuts so as to provide proper protection against rock and earth slides from the adjoining land on to the pavement "; (b) " * * * in failing to patrol the said highway properly under the conditions of heavy rainfall existing at the time and place of the accident herein referred to, and in failing to post warning signals to warn approaching users of the highway of a large accumulation of rock and earth lying on the pavement on the west side of the said highway or southbound lanes of said highway ", and (c) " * * * in permitting an accumulation of rock and earth to remain on said highway at said time and place for an unreasonable length of time without warning to approaching users of the highway of the obstruction to traffic thereon at said time and place ".

The State denies any liability herein, and contends that the claimant has failed to prove facts sufficient to constitute a cause of action.

New York State Route 9W afore-mentioned at the point of the accident, at all times herein mentioned, consisted of four concrete lanes of traffic, two for southbound and two for northbound traffic, the north and southbound traffic lanes being separated by a mall.

The highway at the place involved herein had been cut through rock and earth, the right of way being forty feet higher than the grade of the pavement. The embankment at the place of the obstruction and on the west side of said highway consisted of earth with rocks and stones embedded in it. Immediately north of the point of the collision there was a curve, and the point of the collision was about twelve feet south of the end of said curve. There was a culvert eighty feet north of and another seventy feet south of the point of the accident herein, both culverts being eighteen inches in diameter.

It is undisputed that on March 24, 1944, at or about 2:00 A.M. of that day, claimant's son was driving claimant's automobile in a general southerly direction on the State highway hereinbefore mentioned; that at said time and place there was a

collision between claimant's automobile thus driven by claimant's son and an accumulation of rock and earth; that said accumulation completely covered the two lanes of southbound traffic, which lanes aggregated twenty-three feet in width and extended on to the aforesaid mall and to some extent beyond the mall; that said accumulation extended to the south a distance of sixty feet from the point of impact; and that damage was sustained to claimant's car in the amount proved upon the trial.

It does not appear exactly when said highway became thus obstructed. Claimant's son had come over it at or about 5:00 or 6:00 P.M. in the evening previous to the accident, and there was nothing obstructing the road at that time. The State Trooper who investigated the accident herein received a call relative to the landslide at about 2:00 A.M. of March 24, 1944, which was approximately the time when the collision occurred. Claimant's son testified that there had been no cars ahead of him, and that he could remember no cars coming from the south toward him from the time he left the city of Newburgh, his last stop, up to the time of the collision. Obviously, under the circumstances, the landslide must have occurred some time between 5:00 and 6:00 P.M. of March 23, 1944, and 2:00 A.M. of March 24, 1944.

In March, 1944, this highway was patrolled in daylight hours, and a crew of men was maintained whose duties, among other things, included that of removing obstructions from the highway occasioned by slides of earth and rock.

There were no signs or barricades warning of this particular landslide and obstruction, but it is uncontradicted that there were signs along said highway warning of falling rock. It was established in particular that there was a sign 1,400 feet north of the obstruction which read " CAUTION — BEWARE OF FALLING ROCK ", or words to that effect; and that at a point 1,250 feet north of said obstruction there was a button reflector " CURVE " sign with a curved symbol on it indicating a turn to the right. Underneath said " CURVE " sign and attached to the same post, there was a button reflector sign carrying the legend " SLOW " on it.

Claimant's automobile was being operated at the rate of thirty-five miles per hours just previous to the impact, and its headlights were lighted. Claimant's son testified that he was twenty to twenty-five feet north of the obstruction when he first observed it; that upon contact, the front end of the automobile slid up on top of a large boulder so that the front wheels were completely off the ground, and the front end of the automobile was up in the air about three feet, with its rear bumper almost

touching the pavement; that the accumulation of rock and earth at its highest point was eight or nine feet above the level of the highway, sloping downward to the east from the west side of the highway; and that he had pulled to his extreme left and on to the aforesaid mall in an effort to get around the obstruction, but struck it nevertheless.

We are satisfied that insufficient proof has been adduced by claimant to warrant a finding that the highway was improperly constructed. We believe, however, that actionable negligence on other grounds on the part of the State has been shown, and we now discuss them.

It is true that there is no evidence in the case of previous landslides at the *particular* point on the highway where this collision occurred; but it is equally true that the record establishes that at various points along said highway, at all times herein mentioned, there were areas where the adjoining embankments were affected by frosts and rains in the spring of the year, and that when the frost left the ground in these areas, stones and earth, depending upon the nature of the adjoining soil, came down the face of these embankments. Furthermore, it was established by the State that on prior occasions, rocks, stones, and earth had rolled and slid down embankments in various areas along said highway on to the traveled portions thereof, both in springtime as well as at other times during the year, following rainstorms; and that on occasions it had been necessary to clear the highway of such obstructions. As a matter of fact, maintenance crews were maintained for that very purpose. The posting of the signs hereinbefore referred to is also evidence of the fact that the State recognized the danger, as it existed on said highway, with reference to slides of earth and rock.

The frequency with which rock and earth had fallen upon the highway during each spring and at other times during the year since the highway was constructed about 1942, was sufficient to charge the State, as owner of the adjacent property, with notice of a dangerous condition. Furthermore, it is fair to state herein that the officials and employees of the State had actual knowledge of the dangers to travelers on this highway. (*Klepper* v. *Seymour House Corp.*, 246 N. Y. 85; *Shaknis* v. *State of New York*, 251 App. Div. 767, affd. *sub nom. Doulin* v. *State of New York*, 277 N. Y. 558.)

It is the duty of the State to maintain its highways in a reasonably safe condition for travel, and also, as the owner of the adjacent mountain, to construct such barriers as necessary to prevent rock and earth from falling upon travelers using the

highways. (*Shaknis* v. *State of New York, supra; Arthur W. Brown* v. *State of New York,* 58 N. Y. S. 2d 691, affd. 271 App. Div. 811; *Burt I. Brown* v. *State of New York,* 58 N. Y. S. 2d 691, affd. 271 App. Div. 811.) As was said by the court in the *Shaknis* case (*supra*) at page 767: " * * * if the highway could not be made safe for travel it should have been closed."

The day previous to said accident, it had rained heavily up until the twilight hours, when the rain had turned to a drizzle. In fact, the rain was referred to as a " storm " by an employee of the State.

The danger to the traveling public herein was a hidden one, not reasonably apparent to the users of the highway. We feel that the warning signs, to which reference has hereinbefore been made, were not sufficient to call such danger to the attention of those traveling the same. Such a failure to warn is negligence. (*Trimble* v. *State of New York,* 263 App. Div. 233; Restatement, Torts, § 342, comments [d], [h]; *Kittle* v. *State of New York,* 245 App. Div. 401, affd. 272 N. Y. 420; *Collentine* v. *City of New York,* 279 N. Y. 119; *Connelly* v. *State of New York,* 44 N. Y. S. 2d 331; *Ziehm* v. *State of New York,* 270 App. Div. 876.) We hold, therefore, that there is a fair inference that the potential danger of landslides and of falling rock and earth under the circumstances herein was not adequately brought to the attention of the driver of claimant's automobile as a user of said highway.

It was the duty of the State to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care. (*Snowden* v. *Town of Somerset,* 171 N. Y. 99, 105–106.) The State, through its officers, agents, and employees could have reasonably anticipated and foreseen the occurrence of such an accident as happened on the day in question. (*Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339; *Flaherty* v. *State of New York,* 296 N. Y. 342, and cases cited therein; *Torrey* v. *State of New York,* 266 App. Div. 900.)

The State was further negligent, it seems to us, in failing, under the circumstances herein, to have made an inspection of the site of the accident, and of the embankments along the said highway following, if not during, the rainstorm, the severity of which they were well aware. (*Connelly* v. *State of New York, supra.*)

The mere happening of the accident outside of the patrol period (May 1st to November 15th) is no defense to this claim where the hazardous condition existed, and the State had knowl-

edge, actual or constructive, of the same from previous patrol seasons. (*Karl* v. *State of New York*, 279 N. Y. 555; *Torrey* v. *State of New York, supra.*) The State's liability herein arises under section 8 (formerly section 12-a) of the Court of Claims Act (L. 1939, ch. 860). (*Shaknis* v. *State of New York, supra*; *Brown* v. *State of New York* [two cases], *supra*.)

We hold that the driver of claimant's automobile was free from contributory negligence; but it is our opinion that the question of his contributory negligence is academic under the circumstances of this case. It is uncontradicted that claimant's son had borrowed the car and was driving it for his own use. One who borrows the car of an owner for his own use is a gratuitous bailee. He is not an agent of the owner. He uses the car for his own business or pleasure, and not for any purpose in which the owner is interested. Neither is he a servant of the owner. He is not subject to his direction or control. (*Gochee* v. *Wagner*, 257 N. Y. 344, 347.) The fact that claimant gave his son permission to drive his car on this occasion did not make him his agent so that his contributory negligence, if any, would be imputed to him and would bar his action. (*Gochee* v. *Wagner, supra; Webber* v. *Graves*, 234 App. Div. 579; *Mills* v. *Gabriel*, 259 App. Div. 60, affd. 284 N. Y. 755; *Buckin* v. *Long Island R. R. Co.*, 286 N. Y. 146.)

It is well recognized that section 59 of the Vehicle and Traffic Law of the State of New York which imputes the negligence of the borrower to the owner in actions *against* the owner, does not impute such negligence in actions *by* the owner. In actions *by* the owner the statute has not changed the common law. (*Gochee* v. *Wagner, supra; Mills* v. *Gabriel, supra; Webber* v. *Graves, supra; Hessler* v. *Nelipowitz*, 55 N. Y. S. 2d 692.) At common law the negligence of a member of a family who borrows the owner's car with his consent was not imputed to the owner. (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388, 393.) The statute (section 59 aforesaid) does not change the common-law rule respecting the owner's rights to recover from third persons under the circumstances of this case disclosed by this record.

The motions of the State made at the end of the claimant's case and at the end of the entire case to dismiss the claim are respectively denied with an exception to the State in each instance.

We are, therefore, making an award against the State of New York for the damages sustained by claimant in accordance with the findings accompanying this opinion.