CHARLES W. GARRETTE, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29205.)

JEANETTE P. GARRISON, as Administratrix of the Estate of MARGARETTE PRIESTLY, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29206.)

Court of Claims, January 9, 1950.

*W. S. Barrett* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Howard F. Danihy* of counsel), for defendant.

GORMAN, J. The within claims arise out of an accident which occurred at approximately 9:30 A.M., on November 15, 1946, at the intersection of the Taconic State Parkway and New York State Highway, Route No. 129.

In this vicinity, the Taconic State Parkway runs generally south on a steadily declining grade of 4% to 5% to the intersection, at which point it curves sharply to the east and Route No. 129 intersects it at approximately at right angle from the west. For forty feet north of the intersection, the parkway is separated by a mall and Route No. 129 ordinarily twenty feet wide, increases in width as it intersects the parkway. A three-inch curb marks the southern boundary of the intersection and approximately five feet to the south of this curb a rustic log fence had been constructed in 1931. Maintenance of this fence was the responsibility of the State Highway Department. At certain periods in its existence, the fence railing had been painted with colored stripes to denote danger, but on the day of the accident any such warning device, if present at all, was faded, dirty and ineffective. Immediately adjacent and to the south of this fence, the ground slopes abruptly downward at approximately a forty-five degree angle, forming an embankment about seventy feet in length which terminates in the water of Croton Reservoir.

Witnesses for the State testified to the presence of a small green " Slow " sign about 1,700 feet north of the intersection and a red " Slow " sign with a curved easterly pointing arrow about 300 feet further south. On the north end of the mall there was a green sign with a conspicuous white arrow pointing directly west. On the south side of the intersection adjacent to the fence, there was a small green sign reading " New York " in five-inch white letters with an arrow pointing east and a New York State route marker denoting " Route 129 " with an arrow pointing west. A double white line painted on the center surface of the parkway led directly to the north end of the mall.

On the morning of the accident the weather was clear and bright. Claimant's intestate, Margarette Priestly (Garrette), was driving south to New York City on the parkway, in a 1937 Buick four-door sedan, in which the claimant, Charles W. Garrette, and his daughter, Barbara Garrette, were passengers. Claimant Garrette, the owner of the car and a licensed driver, occupied the front seat next to the intestate. She was the holder of a renewed learner's driving permit and was approaching the intersection at about thirty-five miles per hour. There is no direct evidence of what transpired within the next few seconds. The first indication that Garrette, who was peeling some fruit, had of anything unusual was a scream from Margarette, " Oh my God, the road ", and an almost simultaneous crash. In the next instant, the car was down the embankment and into the water. Claimant's intestate was drowned. The child, Barbara, was rescued by her father, but could offer no further explanation. Brake marks upon the pavement for a short distance north of the curb pointed the course of the car through the fence a short distance to the west of the projected westerly parkway lane. A section of the fence was pushed out and one of the upright posts pushed over to the south. The weight of evidence establishes that this fence was in an insubstantial and decaying condition.

It is the duty of the State to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care. (*Snowden* v. *Town of Somerset*, 171 N. Y. 99; *Juliano* v. *State of New York*, 190 Misc. 180.) The State must maintain its highways in a reasonably safe condition for travel at all times. (See *Doulin* v. *State of New York*, 277 N. Y. 558.) This duty includes the duty of giving adequate warning of dangerous conditions in the highway. (See *Barna* v. *State of New York*, 267 App. Div. 261, affd. 293 N. Y. 877; *Perry* v. *State of New York*, 49 N. Y. S. 2d

541, and *Dawley* v. *State of New York,* 186 Misc. 571.) The signs erected must be sufficient for the purpose intended. (*Trimble* v. *State of New York,* 263 App. Div. 233; *Laitenberger* v. *State of New York,* 190 Misc. 633, affd. 273 App. Div. 942.) Negligence is indicated in failing to maintain warning signs such as are commonly found at places where less danger is to be apprehended than that encountered here. (See *Van de Walker* v. *State of New York,* 278 N. Y. 454.) Inadequate, misleading or insufficient signs may be a direct basis for predicating liability on the part of the State. (*Ziehm* v. *State of New York,* 270 App. Div. 876.)

The nonstandard " Slow " signs located over a quarter of a mile from the intersection were clearly inadequate to warn southbound travelers of the approaching seemingly dead-end intersection. The presence of the westerly pointing arrows at the north end of the mall and on the route marker and the lack of adequate, legible signs denoting the direction of the parkway might well tend to mislead a motorist into believing that the parkway continued to the right, rather than to the left as it actually did. In addition to the confusion resulting from the signs or lack thereof, was the dangerous situation engendered by the presence of a reservoir located at the base of a steep embankment, in close proximity to the highway and separated therefrom by a wooden fence whose only function, as admitted by the State, was to guide and not to guard.

It is now settled that under proper circumstances the State is under a duty to provide and maintain at dangerous places, sound and adequate barriers. (*Sanders* v. *State of New York,* 191 Misc. 248, affd. 274 App. Div. 842, affd. 298 N. Y. 850; *Garrow* v. *State of New York,* 268 App. Div. 534.) It is apparent that the site of the present accident was hazardous. The only protection afforded by the State at this position was an outdated wooden barrier in poor condition whose only purported function was to warn. Its service as a warning was definitely curtailed by the failure of the State to provide for its proper painting. It was conceded by the State that if a car were to go through the guide rail, that it could not be prevented from going down the concealed embankment. Taking all of the factors into consideration, we hold that they constituted a dangerous situation which the State should have reasonably anticipated and that the State failed in its duty to erect and maintain adequate signs and barriers. This failure placed decedent in a dangerous situation from which she was unable to extricate herself in time to avoid the fatal consequences which ensued

and was the proximate cause of the accident. A history of at least one previous accident under quite similar circumstances should have been a further indication to the State that a serious condition existed.

We find that the claimant's intestate was free from contributory negligence. A speed of thirty-five miles per hour is not unreasonable on a modern highway such as the Taconic Parkway, under the instant circumstances. (*Barna* v. *State of New York*, 267 App. Div. 261, affd. 293 N. Y. 877, *supra*.) The decedent had a right to operate a motor vehicle while in possession of a learner's permit accompanied by a licensed operator and there is no evidence that she was not a reasonably competent driver. There is no indication that the claimant, Charles W. Garrette, failed in his duty to supervise the operation of the car by deceased. The fact that he was temporarily diverted at the precise time of the accident is insufficient to predicate negligence against him under the circumstances herein.

The motion of the State to dismiss the claim of Charles W. Garrette for failure to timely file his notice of intention, first raised upon the trial, is denied upon the ground that the mailing of the notice of intention to file a claim upon the ninetieth day constituted timely service of such notice upon the Attorney-General and the Department of Public Works. (*Crittenden* v. *Adams*, 5 How. Prac. 310; *Elliott* v. *Kennedy*, 26 How. Prac. 422; *Saxton* v. *State of New York*, 146 Misc. 233; *Diamond* v. *State of New York*, 147 Misc. 706; *Petronis* v. *State of New York*, 170 Misc. 223.) The filing of the notice of intention in the office of the clerk of this court is an administrative procedure and the position of the State was in no way prejudiced by the fact that the filing took place on the ninety-first day. The purpose of the time limitation prescribed in the Court of Claims Act is to afford the State timely notice and place it in a position where it may adequately investigate any claim. (*McMahon* v. *State of New York*, 173 Misc. 1004, affd. 261 App. Div. 879.) In the present instance, the Attorney-General's office, which is the investigatory body of the State, received such notice, and in addition, it appears from the record that the State Police commenced an investigation and took numerous photographs upon the very day of the accident. Under all of the circumstances, we are persuaded that there was a substantial compliance with the provisions of the statute sufficient to establish jurisdiction.

Awards to the respective claimants are made in accordance with the accompanying decisions.