MARYANNE McDEVITT, Appellant-Respondent, *v.* STATE OF NEW YORK, Respondent-Appellant. (Claim No. 31246.)

CONSULA J. HERRON, Appellant-Respondent, *v.* STATE OF NEW YORK, Respondent-Appellant. (Claim No. 31247.)

Third Department, November 23, 1955.

*John T. DeGraff* and *Harold R. Soden* for appellants-respondents.

*Jacob K. Javits, Attorney-General* (*John R. Davison* and *James O. Moore, Jr.,* of counsel), for respondent-appellant.

FOSTER, P. J. These are appeals by the State from judgments of the Court of Claims, one in favor of the claimant McDevitt in the sum of $4,062.86, and the other in favor of the claimant Herron in the sum of $42,607.01, for injuries sustained in an automobile accident.

The accident happened in Franklin County near a place known as Brighton's Corners. There a State highway, known as Route 192, turns sharply to the left and near the apex of its curve is

intersected by a town highway which turns sharply to the right as one approaches from the west. The accident occurred about 6:30 P.M. on January 20, 1952; and the proof indicates that it was a dark cold night, with the State highway covered with snow and ice so that the macadam pavement could not be seen. It could also be found that waist high snowbanks existed along the sides of the State road. In addition to those conditions there was a fog which hung low over the ground. There is some proof that because of poor visibility the driver of the vehicle, who was claimant Herron, was keeping to the right edge of the highway, following the line of a snowbank where the snow had been plowed back, and driving at a speed of twenty to twenty-five miles an hour.

Claimants were enroute from Paul Smith's College to Lake Placid by way of Route 192. Neither claimant had ever been over the highway before. Prior to reaching the intersection mentioned they had no difficulty. The roadway was straight and level as they approached it, but there was no warning sign of a curve either to the right or left, and neither the curve of the State highway to the left or the intersection of the town road could be seen until they were practically at the intersection. There was on the State highway a road sign, which the driver saw, bearing the inscription " N. Y. 192 ", about 440 feet from the point where Route 192 curves sharply to the left. At that distance however neither the curve nor the intersection of the town road was visible. About 40 feet further on to the east there was another sign indicating a Y intersection. Claimants assert that they did not see this sign. It was not reflectorized, and was partially obscured by the snowbank on the right-hand side of the road according to their testimony.

At the triangle in the intersection there was a fairly large white sign with a marker pointing to the right as follows: " Saranac Lake ━━━━▶ ". Claimants assert that when they saw this sign they assumed it referred to 192 because they knew that the State highway went to Saranac Lake. They knew nothing about the intersecting town road which also went to Saranac Lake. They did not see the smaller 192 route marker, also in the triangle, with a small arrow pointing to the left. The upshot of claimants' contention is that they went off the curve of the State highway onto the town road in the mistaken belief that they were following Route 192. They were confronted with a sharp declivity where the town road dipped into a valley, and the pavement thereof was covered with ice. The driver immediately applied her brakes but her car slid ahead,

straight down a hill until it struck and went through a guardrail of a narrow bridge on the town road. Both claimants suffered personal injuries, and in the case of the claimant Herron such injuries were substantial and serious.

The claims were tried and determined on the theory that the State was negligent in failing to provide and maintain adequate warning signs on Route 192. Originally the claims alleged that the State was negligent in the construction of the bridge and the approaches thereto, but this specification was abandoned when it was discovered that the bridge was on a town highway.

There can be no question that the State now has a duty to erect and maintain adequate warning signs along its highways where the exercise of ordinary prudence would indicate their necessity as a safety measure. When the State waived its sovereign exemption from liability in connection with its highways it assumed the duty to guard against such dangers that a prudent individual would anticipate in the exercise of reasonable care (*Canepa* v. *State of New York,* 306 N. Y. 272; *Ziehm* v. *State of New York,* 270 App. Div. 876; *Garrette* v. *State of New York,* 197 Misc. 842; *Rugg* v. *State of New York,* 284 App. Div. 179).

The application of the rule must depend of course on the facts of the individual case. Each case must stand on its own footing. Here the facts are different than those usually involved in the ordinary run of highway cases against the State. Claimants' terminal mishap did not occur on the State highway. There is no proof that their car skidded or slipped until it reached the town road, but nevertheless their mishap began when they mistakenly left the State highway and descended the town road. The weight of evidence, giving due allowance for weather conditions, supports the conclusion that the genesis of their mistake was the misleading nature of the intersection and the failure of the State to erect adequate warning signs. The case is somewhat analogous to the case of *Barna* v. *State of New York* (179 Misc. 29, revd. 267 App. Div. 261, which was affd. 293 N. Y. 877), where the accident happened on a bridge owned and maintained by a railroad. The State was held negligent because it failed to give an adequate warning as to a curve and downgrade approach to the bridge. In this case the fact that the accident happened on a town bridge does not exonerate the State. In such a location and latitude the exercise of reasonable care and prudence would anticipate snow and ice conditions in the wintertime, not only on the State highway but also on the town road; and

also poor visibility at times due to fog, rain or sleet. That, in conjunction with the physical nature of the curve and intersection, signalized potential danger to travellers approaching from the west which the State in the exercise of ordinary care could not ignore. Under such circumstances and in such a situation the town road could not be insulated off as a separate entity so as to absolve the State from erecting adequate warning signs as to possible danger ahead, and particularly to warn travellers of the fact that the State road curved sharply to the left. The court below properly held that the State's negligence in these respects was the proximate cause of the accident, and that claimants were free from contributory negligence.

We have examined the proof as to injuries and are satisfied that the awards were within the range of adequate permissible limits and are sustained by the proof. The cross appeals of the claimants should therefore be dismissed, without costs. The judgments should be affirmed, with costs.

BERGAN, J. (dissenting). If the State were fully responsible for the maintenance of the town road upon which this accident occurred it could not be held to be answerable in tort for the occurrence. No defect in construction is shown. The road went down a hill and over a bridge. The hill is not shown to have been too steep for general highway use; nor the bridge too narrow.

What occurred is that the claimant Herron's car skidded or slid and she lost control of it. It skidded because the road was slippery. The driver said it was "very" icy. It is not shown that the road was not plowed in the usual manner. The testimony suggests merely that the road was slippery enough for the car to skid.

No one can prevent the existence of slippery roads at some places and in some periods during an Adirondack winter; and that is all that is shown as to the surface condition of the road, whether the town or the State be responsible for its maintenance. No proof is in the record that it was unusually slippery long enough to have imposed a notice upon people responsible for it that it needed correction. (*Quigley v. State of New York,* 281 App. Div. 185, affd. 308 N. Y. 846; *Bertram v. State of New York,* 282 App. Div. 415, affd. 306 N. Y. 913.)

But the State was not responsible for the maintenance of this road. It can scarcely be argued that if the State were somehow responsible for the claimant Herron's making a wrong turn to get on a town road, that it would thereby bring home to itself a liability that it would not have had to take if it had the direct

responsibility for the construction and maintenance of the place where the accident occurred. This is not a case where a driver does not negotiate a curve dangerous in design because a sign does not give him fair warning of the curve. It is not a situation where the danger complained of and to be warned against by sign was any permanent condition in the intersection at all.

Claimants argue for a holding that the warning given on the approach to the curve in the State highway was inadequate. But the curve in the State highway did not in any way cause the accident. The car did not meet any peril on or from the curve. It did not reach the curve. The driver saw a sign pointing to the town road on the right as a way to Saranac Lake, read the sign, and followed it. No one said on the record, or could say, that it was negligence to maintain a sign indicating that the town road led to Saranac Lake; and it is perfectly clear from the driver's testimony that having seen the sign, she steered her car in that direction.

There was a large sign with " warning " and an indication of a road intersection an adequate distance on the State road before the intersection was reached. The claimant did not see this sign. It has not been shown that this was not sufficient warning of the existence of the intersection ahead or that the design of this " warning " sign was not in accordance with standard practice. If the claimant-driver made a mistake about which road to take at the fork, there was warning enough, at least, that she had been approaching a fork in the road. The danger was not in the fork or the manner of design or construction of the intersection.

To make a mistake there, to take the town road instead of staying on the State road, was not a peril to be anticipated from road design. It was fully intended that people who wanted to go from that point in the State road to Saranac Lake take the town road, and it seems that this was the preferred way to go.

This road was not a trap or a hole that she got into; it was not a " chute " to use the term of the Court of Claims; its surface was not shown, indeed, then to be any different from the surface of the State highway, and it is apparent from the claimant's testimony that the plowing operation had been a continuous one from the State to the town road. All that is shown is that the road was icy. What happened to the car was not even " a real skid ", in the words of the driver, " it just seemed to go ahead in a straight line ". Certainly this is a hazard sometimes to be expected in winter driving.

The grade of the town road has not been shown to be so "steep" that it would not be customary to find such a grade in ordinary highway design or that it would not be met in driving any highway in this terrain. The cross-section map offered by claimants shows no steep hill on the town road; but shows a general downward grade on the State highway continued with only a slight increase on the town road; and it shows the area of the accident itself to be level. The photographs show, merely, a relatively slight drop in elevation which in this State has countless counterparts on numberless roads. Even the specific testimony of claimants' engineer based on his measurement does not show the grade to be steep. Liability here has been imposed on the State on a finely spun theory that has no firm anchor in reality.

Even if the accident could somehow have been attributed to a defect in design or construction of the curve on the State highway, it has not been shown that the smaller signs and arrows just before and at the point of curve were inadequate to give warning of the type and arc of this curve. The testimony in the record on behalf of the State is specific, and uncontradicted, that these signs were proper and in accordance with the rules and regulations at the time of accident. The *Manual of Uniform Traffic Control Devices* (N. Y. Official Compilation of Codes, Rules & Regulations [4th Official Cum. Supp.], p. 1127) of which the Court of Claims took judicial notice, and on which it based its decision, contained the specific direction of the Traffic Commission when adopted in 1948 that existing signs " now in use " may be continued " until they are no longer serviceable ". Thus, even if the design of the curve had been a cause of the accident the warning would be sufficient under the uncontradicted proof in the record.

There has been a consistent judicial policy to be sparing about imposing a liability upon the State for the transitory effects on highways of winter weather in a climate such as ours unless there be some defect in design shown to make ice and snow an unusual risk. No case has gone so far as to impose a liability on the State for a casualty caused by weather alone at a place for which the State had no legal responsibility to anticipate or to correct a danger.

The judgments should be reversed and the claims dismissed.

COON and HALPERN, JJ., concur with FOSTER, P. J.; BERGAN, J., dissents in an opinion, in which ZELLER, J., concurs.

Judgments affirmed, with costs.

Cross appeals of the claimants dismissed, without costs.