CITY OF AUSTIN ET AL V. CURTIS O. SCHMEDES ET AL

No. A-4890. Decided May 4, 1955.
Rehearing overruled June 8, 1955.
(279 S.W. 2d Series 326)

*W. T. Williams, Jr.,* City Attorney and *Doren R. Eskew,* Assistant City Attorney, for the City of Austin, and *Coleman Gay,* of Austin, for Skinner, one of the contractors, petitioners.

The Court of Civil Appeals erred in holding that the duty of the city of Austin arose out of a proprietary instead of a government function. Said court also erred in holding that the judgment against the city should be supported, in law, by the jury's verdict that somebody was negligent because somebody failed to provide directing signs for traffic. Burchett v. City of Stanton, 262 S.W. 952; Shuford v. City of Dallas, 144 Texas 342; Missouri, K. & T. Ry. Co. v. Roberts, 225 S.W. 2d 198.

*Cofer & Cofer, Powell, Wirtz, Rauhut & McGinnis* and *William A. Brown,* all of Austin, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Curtis O. Schmedes, as plaintiff, suing for himself and his wife, and as next friend for his infant daughter, sought by this suit to recover damages from City of Austin, Robert J., Obert B., Austin B., and Arthur L. McKowan and Dean Skinner, defendants. The defendants will be referred to in this opinion as the City, the McKowns, and Skinner.

A jury trial resulted in a verdict and a trial court judgment against all defendants. All appealed. The Court of Civil Appeals affirmed. 270 S.W. 2d 442.

The suit grew out of an automobile collision which occurred on East Avenue between 12th and 13th Streets, within the corporate limits of the City of Austin. East Avenue, between these two streets had been for many years past a divided highway for one-way traffic, with north-bound traffic using the traffic lanes on the east side and south-bound traffic using the traffic lanes on the west side of a broad esplanade or parkway. At the time of the collision, however, the west side or south-bound traffic lanes were closed while undergoing changes and improvements. These changes and improvements were being made by the McKowns as subcontractors under a general contract between the Texas Highway Department and Skinner.

The plaintiff's automobile collided with an automobile being driven by one Carl Anderson who was not made a party to the suit. Mr. Anderson was traveling west on 14th Street and entered East Avenue at a point where it was a two-way street. 14th Street does not cross East Avenue at right angles, the point where it enters East Avenue from the west being some distance south of the point where it enters from the east. Ordinarily, one traveling west and wishing to cross East Avenue on 14th Street would enter the Avenue and turn south in two-way traffic until he reached the point where he could turn back west on 14th Street. Ordinarily, one traveling west on 14th Street and entering East Avenue from the east and wishing to travel south thereon would turn south and travel in two-way traffic to a point a short distance south of the western entrance of 14th Street where he would enter the south bound, one-way traffic lanes. On the occasion in question, however, the entrance of 14th Street from the west and the entrance to the one-way, south-bound traffic lanes were closed with barriers. These barriers were erected originally by the City while laying sewers in the area and remained while the McKowns were carrying out their work.

On entering East Avenue Mr. Anderson turned south in the two-way traffic lanes, drove past the barred western entrance of 14th Street and past the barred entrance of the one-way, south-bound traffic lanes, entered the western lane of the one-way, north-bound traffic lanes and proceeded to the point of collision a short distance south of the eastern entrance of 13th Street. He had followed this route on other occasions after the erection of the barriers. At the time of the collision Mr. Schmedes was traveling north in the one-way north-bound traffic lanes of East Avenue, in the western lane. The collision occurred near the crest of a hill, at a point where neither Mr. Anderson nor Mr.

Schmedes could have observed the approach of the other for any great distance. The foregoing description of the streets and the point of collision can be better understood by referring to the diagram in the opinion of the Court of Civil Appeals. See 270 S.W. 2d 445.

Liability of the defendants must rest on the following jury findings: 1. That the failure to provide directing signs for traffic entering East Avenue from the east on 14th Street was negligence which was approximate cause of plaintiff's injuries, and 2. That the failure to provide a sign warning south-bound traffic not to enter the east roadway in the 1200 block of East Avenue was negligence which was a proximate cause of plaintiff's injuries. The jury absolved the plaintiff of negligent conduct, and found that the collision was not unavoidable and that Mr. Anderson's conduct was not the sole proximate cause thereof. The principal theory on which all defendants seek to be relieved of liability is that they were under no legal duty to the plaintiff to provide directional and warning signs at the places mentioned in the jury findings.

The City contends that the posting of directional and warning signs for the regulation and control of traffic is a governmental function and that it cannot be held liable for negligence in the performance of a governmental function. In support of its position it cites Baker v. City of Waco, Texas Civ. App., 129 S.W. 499, no writ history; Parson v. Texas City, Texas Civ. App., 259 S.W. 2d 333, writ refused, and a number of other cases. The cases cited undoubtedly support the general proposition that the regulation and control of traffic in and by a municipality is a governmental function. All of them involve negligence in the maintenance of traffic lights. The negligence charged grew out of and was wholly incident to the performance of a governmental function.

■ The plaintiff seeks to predicate liability of the City on breach of its duty to post such directing and warning signs at the site of the street improvements as were reasonably necessary to protect users of the streets from dangers and hazards incident to the improvement. That the law imposes such a duty on a city is well settled; and it is equally well settled in this state that the duty is a non-delegable duty for the breach of which a city will be held liable in damages. Gabbert v. City of Brownwood, Texas Civ. App., 176 S.W. 2d 344, writ refused; Shuford v. City of Dallas, 144 Texas 342, 190 S.W. 2d 721; Patterson v. City of Austin, Texas Civ. App., 29 S.W. 1139, no

writ history; City of El Paso v. Mendoza, Texas Civ. App., 191 S.W. 2d 102, refused, W.M.; 39 Texas Jur., Streets, § 121, pp. 690-691. See also McQuillin on Municipal Corporations, Third Edition, Vol. 19, § 54.17, pp. 77-80; 63 C.J.S., Municipal Corporations, § 785, p. 97. But we know of no Texas decision, and have been cited to none, that extends the duty of a city beyond protection of the user from physical defects or obstructions in or adjacent to the streets.

■ It thus appears that the Texas cases cited by the parties are not controlling of the precise question presented here, to wit: Does a city owe a duty to street users to warn them by signs of immediate dangerous conditions, other than physical defects and obstructions, created by the city in the performance of its proprietary function of improving its streets? We hold it does.

The City quotes language from the opinions in Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W. 2d 778, and Hanson v. Berry, 54 N.D. 487, 209 N.W. 1002, 47 A.L.R. 816, to the effect that the full extent of the duty of a city in fact situations like the instant case is to use ordinary care to protect users of streets against dangerous physical conditions in the streets, but in each of the cited cases the injury grew out of alleged negligence of the city in the performance of its strictly governmental function of regulating traffic and the language to which our attention is directed is much broader than the facts of the cases required for decision of the questions involved. A simple example will serve to illustrate that the language is much too broad. If a city engaged in a street improvement or maintenance project found it necessary, in moving materials from the place of supply to the place of use, to run its fleet of trucks over a city street counter to the flow of traffic in one-way traffic lanes, the danger to the public using the street would be from the vehicular traffic and not from what would ordinarily be called a defect or an obstruction in the street. Can it be thought that the city would be under no duty to close that section of the street to public use? And if the section of the street so used were partially barricaded so as to permit the passage of the trucks, a sign on the barricades such as "Do Not Enter", warning the public away from the entrance, would operate, in a sense, to control and regulate traffic, but in that case it would hardly be questioned that the city owed a duty to the public to erect such a sign and that its erection was in discharge of the duty of care imposed on the city in the performance of a proprietary function.

In addition to the cases mentioned above, the City cites, as in point or analagous, Doughty v. Philadelphia Rapid Transit Co., 321 Pa. 136, 184 Atl. 93 and Campbell v. City of Santa Monica, 51 Cal. App. 2d 626, 125 Pac. 2d 561, to which we may add Majka v. Haskell, 274 App. Div. 232, 80 N.Y. Sup. Ct 2d 331, 333. The Doughty case is not in point. In that case the plaintiff sought to hold the City of Philadelphia liable for damages on the theory that it was negligent in tolerating the operation of a west-bound street car, with which the plaintiff collided, on a one-way, east-bound street. Clearly, the negligence, if any, was in the performance of a governmental function. The other two cases are more nearly in point. In the Campbell case a motorist, proceeding north along a highway which was blocked for construction of a bridge, disregarded a sign directing a detour to the right and turned left, eventually turning south again and entering a broad promenade, use of which was restricted by ordinance to pedestrians and special vehicular traffic. The plaintiff, a pedestrian struck by the motorist, sought to predicate liability of the City of Santa Monica on its failure to erect signs or barriers to prevent automobiles from entering the promenade. The court held the city had a right to expect that its streets would be lawfully used and owed no duty to post signs or barriers to prevent an unlawful use thereof. In the Majka cast the plaintiff, a pedestrian, was injured while crossing a bridge in a city street. The sidewalk portion of the bridge was closed with a barricade from which red lights were suspended and on which was a sign "bridge closed." The plaintiff sought to cross in the section of the bridge used for vehicular traffic and was struck by an automobile. A jury verdict was returned in favor of the plaintiff pursuant to the trial court's charge "that if the jury found that the City employees who closed the sidewalk could reasonably have forseen the danger of injury to pedestrians from the closing of the sidewalks and turning pedestrians into the vehicular part of the viaduct, then the City was negligent in failing to place warning signs or otherwise signalling to pedestrians and drivers of vehicles." In reversing the judgment the Supreme Court said: "The City was under no duty, after having lawfully closed the sidewalk, to provide protective devices for pedestrians using the roadway. To hold otherwise would be to place the City in the position of an insurer of a person using its streets. At the most the failure of the City to regulate traffic during the time that the sidewalks were lawfully closed would be an omission of a duty owed the public in general, rather than to any individual such as the plaintiff."

The most that can be said of the two cases last analyzed is that they are persuasive, but not as persuasive as if they had been decided by courts of last resort. In City of Houston v. Shilling, 150 Texas 387, 240 S.W. 2d 1010, 1012, 26 A.L.R. 935, we recognized that the present tendency of the courts is to restrict the doctrine of non-liability and construe it strictly against the city. Moreover, we took a firm stand in that case against extension of the doctrine of non-liability. In the more recent case of City of Houston v. Wolverton, 154 Texas 325, 277 S.W. 2d 101, we adhered to that position.

■ The duty of a city to erect signs at the site of street improvements does not arise out of its police power to control and regulate traffic which it may perform negligently or not at all without risk of liability, but is imposed by law for the protection of the public against immediate dangers created in the performance of the proprietary function of maintaining and improving its streets. The fact that the performance of the duty requires an incidental regulation of traffic does not detract from the duty or change the character of the function which gave rise to the danger.

■ Signs were posted at 15th Street on the north warning south-bound traffic on East Avenue away from the dangerous situation created by the barricading of the western entrance of 14th Street and the south-bound traffic lanes of East Avenue. One entering East Avenue on 14th Street and turning south was confronted with the same situation that would have confronted those approaching from north of 15th Street, a situation fraught with danger both to himself and to north-bound motorists. He had no outlet except that provided by the one-way, north-bound traffic lanes. By posting a sign at the eastern entrance of 14th Street such as "Do Not Enter," "No Left Turn," or "Turn Right Only," the City might well have prevented the southward turn of Mr. Anderson and the ensuing collision with the plaintiff. It was the duty of the City to post the sign as an incident to the closing of the one-way, south-bound lanes and the western entrance to 14th Street.

■ On the other hand, the law imposed no such duty on the McKowns and Skinner. So far as they were concerned the area where the work was being done was barricaded to traffic so that no one could be injured therein. They had no control over other city streets. They were wholly without authority to erect signs at the entrance of 14th Street directing traffic not to enter, or not to turn left, or to turn right only. The erection of such signs

would have been a usurpation of public authority. Moreover, the McKowns and Skinner were prohibited by statute from erecting and maintaining signs at both points mentioned in the jury findings. Article 6701d, Sec. 36(a), Vernon's Annotated Texas Civil Statutes, provides: "No person shall place, maintain, or display upon or in view of any highway any unauthorized sign, signal, marking, or device * * * which attempts to direct the movement of traffic * * *." Article 827a, Sec. 13, Vernon's Annotated Penal Code of Texas, provides: "No unauthorized person shall erect or maintain upon any State Highway any warning or direction sign, marker, signal or light * * *." When construed in pari materia with Secs. 26, 27 and 30(b) we do not believe Sec. 36(a) prohibited the City from erecting a sign at the entrance of 14th Street.

The prohibition contained in the statutes was not relieved by Skinner's contract with the State Highway Department. Certain of the provisions of that contract are quoted in the opinion of the Court of Civil Appeals (270 S.W. 2d 448-449), but when other provisions of the contract not quoted are considered, it is our opinion that the contract neither imposed on Skinner and the McKowns a duty, nor did it authorize, the erection of the signs in question.

■ Our principal concern in granting writs of error on behalf of all party defendants was to review the rulings of the courts below on the duty question. The City has before this Court three other points of error. They assert, in substance, that the City had no notice of the dangerous situation created by erection of the barriers; that the issues submitted were too general in not confining the inquiry to negligence of particular defendants; and that the conduct of Anderson was, as a matter of law, the sole proximate cause, or a new and intervening cause, of the collision. These points were discussed and overruled by the Court of Civil Appeals. We agree with those rulings. While under usual and ordinary circumstances it would hardly be held that a city could or should foresee that a motorist would violate the law and drive the wrong way in one-way traffic, the circumstances under which Mr. Anderson entered the east traffic lanes of East Avenue were not usual and ordinary. Under the peculiar circumstances of this case we are not prepared to hold as a matter of law that the city should not reasonably have foreseen that Mr. Anderson would turn south in East Avenue and, having turned south, would enter the only traffic lanes available for his continued journey to the south, with the reasonable probability of injury to those using the traffic lanes in the usual

and intended manner. The rule seems to be that when an intervening illegal act is of such a nature that it might have been anticipated, and is such that the defendant should have provided against it, he will be liable for breach of the duty notwithstanding that the illegal act was the immediate cause of the injury. 65 C.J.S., Negligence, § 111, p. 700; 78 A.L.R. 480.

The judgments of the courts below in awarding plaintiff a recovery against the City of Austin is affirmed, but in so far as recovery was awarded against the McKowns and Skinner the judgments are reversed and as to such defendants judgment is here rendered that plaintiff take nothing.

The costs are adjudged against the City of Austin.

Opinion delivered May 4, 1955.

Rehearing overruled June 8, 1955.