Ray ADAMS et al., Appellants,

v.

Doris CORBIN et al., Appellees.

No. 6951.

Court of Civil Appeals of Texas.

Texarkana.

March 14, 1957.

Rehearing Denied April 11, 1957.

Leachman, Gardere, Akin & Porter, Dallas, Wynne & Wynne, Wills Point, for appellants.

Carter, Gallagher, Jones & Magee, Dallas, Ramey & Ramey, Sulphur Springs, for appellees.

FANNING, Justice.

This is an appeal from an order overruling a plea of privilege filed by appellants.

Appellees, Doris Corbin, individually and as Next Friend for her minor sons, Clifford C. Corbin and Stephen Corbin, and as representative of the Estate of Thomas C. Corbin and Cathy Corbin, both deceased, and Herschel Corbin and wife, Mary M. Corbin, brought this suit against appellants, Ray Adams and Mack Adams, individually and as co-partners, d/b/a Adams Brothers, in the District Court of Wood County, Texas, to recover damages alleged to have been sustained by them as a result of the collision of Thomas C. Corbin's automobile with another automobile in the intersection of State Highway No. 154 and Farm Road 515 in Wood County, Texas, resulting in the death of Thomas C. Corbin and in the death of his minor daughter, Cathy, and also resulting in personal injuries to his wife, Doris Corbin, and to his son Clifford C. Appellees Herschel Corbin and wife, Mary M. Corbin, were the parents of Thomas C. Corbin, deceased.

Appellees alleged that on March 16, 1956, appellants were nearing the completion of Farm Road 515 under their contract of construction with the State of Texas but that on said date the road had not been accepted by the State of Texas and was still under the custody and control of the defendants; that a prime coat of asphalt was on the highway and the road was open for the traveling public; that on said date appellants maintained no nature of signs or warning devices at the intersection of Farm Road 515 and State Highway 154; that such intersection when approached from the West (as Corbin's car was approaching at the time of the collision) was obscured and dangerous; that appellants were guilty of negligence in failing to post any nature of warning devices or any visible warning devices for the highway intersection in question, which negligence was the proximate cause of the damages suffered by appellees.

Appellants filed a statutory plea of privilege to be sued in Henderson County, Texas, where they resided. Appellants filed a controverting affidavit asserting that the District Court of Wood County, Texas, had venue of the suit under Section 9a of Article 1995, Vernon's Ann.Civ.St. alleging appellants' negligent conduct which was a proximate cause of the damages accrued in Wood County, Texas.

After a hearing before the court without a jury of such plea of privilege and controverting affidavit and the testimony adduced, the trial court entered its order overruling appellants' plea of privilege. Appellants have appealed.

Appellants present seven points on appeal which all relate to the claimed lack of evidence or the claimed insufficiency of the evidence to support the order of the trial court in overruling appellants' plea of privilege.

■ The trial court overruled appellants' plea without making findings of fact or conclusions of law which is proper. Rule 385(e), Texas Rules of Civil Procedure.

■ Where a case is tried without a jury, and no findings of fact or conclusions of law are filed by the trial judge, the judgment should be affirmed if there is sufficient evidence to support it upon any lawful theory, and every issue sufficiently raised by the testimony must be resolved in support of the judgment. 3-B, Tex.Jur., Sec. 873, p. 278; John F. Buckner & Sons v. Allen, Tex.Civ.App., 272 S.W.2d 929.

The collision in question occurred on March 16, 1956, between 6:00 and 6:30 p. m., at the intersection of Farm Road 515 and State Highway 154. The automobile driven by Mr. Corbin, containing his wife and children heretofore named, was proceeding east on Farm Road 515 and collided with an automobile proceeding in a southerly direction on State Highway 154. On said date the highway had not been completed and had not been accepted by the State; only the prime coating of asphalt had been laid, but it was beneficial to the road to have traffic on it and the road at that time had been open to the public for travel for about a month. There was testimony in the record that when driving east on 515 approaching the intersection there was timber on both sides, and after crossing 154 it is open on both sides and that on the west side of 154 it was heavily timbered so that going east there was a wooded area on either side. Plaintiffs introduced in evidence photographs of the intersection in question. On said date there were construction warning signs on each side of 154 (which runs north and south), however on said date there were no warning signs situated on 515 east and west of 154, warning of the intersection of 515 with 154.

The resident engineer for the Texas State Highway Department testified that the contract between appellants and the State of Texas specifically provided for signs near each end of the project, an approach sign, "Observe Warning" sign, "State Law," then a slow sign and "Road Under Construction," which signs were to be placed where the new road commenced at either end and on the reverse side a sign "End of Construction." The resident engineer further testified that at certain times other signs or removable barricades are required which are placed at intersections or cross-roads when the road is closed to the public.

The contract also specifically provided: *"It shall be the entire responsibility of the contractor to provide for the passage of traffic in comfort and safety at all times where the proposed road crosses or intersects any existing public road."* (Emphasis added.)

The resident engineer further testified that under the contract the contractor does

not have to secure permission from him in order to put up some type of warning sign or safety sign on his portion of the road during construction. In addition to the minimum requirements at each end of the construction, some of the contractors working under the contractual provisions quoted above, on their own initiative, have placed some type of traffic control sign or warning sign in addition to the specific requirements without first clearing with the engineer's office. Ordinarily this is done without clearance, and if it is not and the resident engineer sees it, he calls attention of the contractor to the fact that they need something. This witness testified that Farm Road 515 was 25 feet wide and about 400 feet from the intersection it began flaring out and at 200 feet it had reached its maximum width which was 60 feet.

Mack Adams, appellant, testified by deposition, among other things, to the effect that the barricades or "Road Closed" signs that had been on 515 at the intersection of 154 before it was opened to the public were taken down and were sitting to the side of 515 at the time the collision occurred, but that these barricades were not so situated as to give any warning to the traveling public; that appellants' construction extended about 1¼ miles east of 154 and about 6½ miles west of 154; that on March 16, 1956, the only signs that they had on 515 were at a point about 6½ miles west of 154 and about 1¼ miles east of 154 and that they had no barricades or signs for east and west bound traffic other than the signs at each end; that the new road (515) was normally 30 feet wide but it began widening out about 800 feet from the intersection and that the last 400 feet was 64 feet wide; that when traveling east on 515 other than the widening of the road there was nothing else to warn a traveler of the intersection; that he did not personally check with Mr. Carter (the resident engineer) or his office as to whether he could put a sign on 515 warning

drivers of the intersection and he did not know of anyone in his organization who did so. Appellant Ray Adams testified by deposition substantially as appellant Mack Adams. Appellants also offered testimony with reference to the wooded area at the northwest corner of the intersection and introduced in evidence a photograph of the area.

W. T. Johnson, superintendent for appellants, testified to the effect that the intersection of 154 and 515 was the most heavily traveled intersection of the roadway they were constructing; that on March 16, 1956, they did not have any nature of sign warning anyone driving east or west on 515 of the approach of the intersection; however, on 154 they had a "Drive Carefully Road Construction" sign and a "Slow" sign for traffic proceeding north and south on 154. Mr. Johnson further testified:

"Q. Did you, yourself, investigate this collision to some extent?

"A. No, sir, I just—like anybody else would have, I drove out after I heard it—I was eating supper at the time I heard it had happened—near Hurley's store, so I just took an idea that that is where it might be, so I drove out—just like anybody else would have.

"Q. Before you knew you had an idea it was at 154 and 515?

"A. Well, I was kind of afraid that that was where it was."

Doris Corbin, appellee, testified by deposition to the effect that the accident happened between 6:00 and 6:30 and that it was not dark at that time and the sun had not set; that they left Winnsboro around 4:00 o'clock driving to Emory; that she did not know what route they followed from west to east but it was the one they were coming back on; that they arrived at Emory about 5:00 o'clock and stayed there about 45 minutes or less; that she had had no conversation with her husband about

the road; the first thing that attracted her attention in connection with the wreck, was the car that they hit and she doesn't remember seeing the intersection and the car that they hit was coming from the left and she did not know how far that car was from the intersection when she first saw it; that this car was traveling in the neighborhood of 60 miles per hour, about like they were; that her husband did not apply his brakes; that no one made outcry as to any warning and that the accident happened quickly and was over quickly and without time for her or Mr. Corbin or the other parties to do anything. Mr. Corbin was killed in the collision.

I. E. Robinson, Sheriff of Wood County, testified to the effect that he was familiar with the intersection of 154 and 515 on March 16, 1956; that after the collision occurred he made tests with Mr. Cowart while driving east on 515 approaching the intersection, to ascertain what the visibility of the intersecting road was as one approached it; that under ordinary circumstances one is practically on it before knowing it because the road is level and they both came up at the same level and there was nothing there to warn one. On cross-examination he testified that the above test was made after the accident at night and he had his lights on; that in daytime if one knew the intersection was there, it could probably be seen a quarter of a mile away. On re-direct examination he testified:

"Q. Did you ever make an approach coming from the west going east in daylight, either before or after this accident involved in this lawsuit, and observe the visibility of the intersecting road?

"A. Yes, sir.

"Q. And in the daytime are you pretty well up on the intersection before you see it or not?

"A. Yes, sir, you could practically drive up on it if you didn't know where it was."

A contractor performing construction work on a public highway is under a duty to exercise ordinary care to protect travelers who are rightfully using the highway and is guilty of negligence in failing to give warnings of danger resulting in damage to the traveler. John F. Buckner & Sons v. Allen, Tex.Civ.App., 289 S.W.2d 387, on the merits; and 272 S.W.2d 929 (er.dism.) on the plea of privilege; Wedegartner v. Skoruppa, Tex.Civ.App., 236 S.W.2d 216; Kampmann v. Rothwell, 101 Tex. 535, 539, 109 S.W. 1089, 17 L.R.A., N.S., 758; Mansfield Construction Co. v. Gorsline, Tex.Com.App., 288 S.W. 1067.

Appellants contend that they owed no duty to place signs or warning devices to warn of the intersection in question and that same on their part would be an unlawful and unauthorized act; in this connection, they cite the case of City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326. However, since the decision in the City of Austin v. Schmedes case was rendered, the Legislature of Texas in 1953 enacted Article 6674u, V.A.C.S. In John F. Buckner & Sons v. Allen, 289 S.W.2d 387, 397, the Austin Court of Civil Appeals, in discussing the new statute and its effect upon the decision in the Schmedes case, said:

"Appellants say that they were not authorized to erect or maintain any sign, signal or device which attempted to direct the movement of traffic and cite City of Austin v. Schmedes, [154 Tex. 416] 279 S.W.2d 326. There the Court considered the liability of contractors for injuries sustained and said that the contractors were prohibited by statute from erecting and maintaining the signs at the points mentioned in the jury's findings. The Court cites Art. 6701d, Sec. 36(a), Vernon's Ann. Civ.St., and Art. 827a, Sec. 13, Vernon's Ann.Penal Code. The first statute deals with persons placing unauthorized signs, etc., and the second with unauthorized persons placing signs, etc., along State highways. The Court further said that the prohibition

contained in the statutes was not relieved by a contract with the State.

"In the above case the accident there considered occurred December 9, 1952, Tex.Civ.App., 270 S.W.2d 442, 444. In 1953, the 53rd Legislature enacted Art. 6674u, supra. Acts 1953, 53rd Leg., p. 706. This Act made it unlawful for any person to disobey signals, warning signs and barricades placed on any highway under construction or being repaired. The Act defines 'Barricade' and 'Warning Sign.' The definitions include those erected or placed on any highway under construction or being repaired by ' * * * any contractor or sub-contractor doing road, street or highway construction or repair work.' Thus the Act makes barricades and warning signs erected by a contractor 'authorized' and makes such contractors 'authorized persons' to erect and maintain the same. This Act was in effect at the time the accident in question here occurred and is controlling on the question of the authority of appellants to erect barricades and place warning signs and signals."

■ Appellants in their brief contend that appellees had warnings of the intersection by: (1) The "Construction—Drive Carefully" signs at each end of the new construction; (2) actual knowledge of the intersection; (3) barricades by the side of the road at the intersection; (4) flaring out of surface portion of the road beginning 600 or 800 feet from the intersection; and (5) rounded corners on each side of the intersection.

We think the trial court could properly conclude that the construction signs at each end of the approximately 8-mile Farm Road 515 were not a warning of the intersection in question, and were not intended to be. Also the barricades in question had been removed by appellants from the road and were on the right of way, and appellants

testified to the effect that on March 16, 1956, "these barricades were not so situated so as to give any warning to the public." The testimony with reference to the flaring out of the surface portion of the road near the intersection, was conflicting with respect to distance and degree; as we view this testimony, it did not establish as a matter of law that appellees were warned of the intersection, but was simply testimony to be weighed and considered by the trial court, along with the other evidence in the case, in determining the questions of negligence and proximate cause. Likewise, the testimony as to the rounded corners on each side of the intersection did not establish as a matter of law that appellees were warned of the intersection, but were simply evidentiary matters to be considered and weighed by the trial court, along with the other evidence in the case, in determining the issues of negligence and proximate cause.

Appellants contend that Thomas C. Corbin, deceased, the driver of the Corbin automobile, knew or should have known that Farm Road 515 intersected with Highway 154, since he had crossed the intersection about two hours previously and that he must have necessarily known the open and obvious conditions of the intersection and that therefore there was no duty to warn him against open and obvious conditions or against conditions already known or which should have been known to him, and appellants cite in connection therewith the case of McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391. It is true that the Corbins passed the intersection in question earlier in the afternoon on their way to Emory. Appellants apparently take the view that as a matter of law this would constitute knowledge of the intersection by Mr. Corbin. Mr. Corbin's familiarity with the intersection was confined solely to this one occasion. There is no evidence in the record as to his impressions of the intersection as he made no statement to his wife or anyone else with

reference to same or with reference to the road and he met his death in his second approach into the intersection. Mrs. Corbin testified that she did not particularly recall seeing the intersection on the trip from Winnsboro to Emory; that she did not recall seeing any construction signs, nor did she notice the widening of the road near the intersection; that her husband did not make any comment about the road condition; that she did not remember seeing the intersection itself prior to the collision; that there was not time to apply the brakes and Mr. Corbin did not apply the brakes; that no one made any outcry or any kind of a warning before the wreck and that it was something that quickly happened and was over with quickly, and without time for her or Mr. Corbin or the other parties to do anything. On the return trip Mr. Corbin had driven about 6½ miles on Farm Road 515 before reaching the intersection and we think the trial court could have reasonably concluded that the exact location of the intersection had not then been definitely impressed upon Mr. Corbin's mind. Also the Sheriff of Wood County (who was familiar with the crossing) testified that "If you did not know the intersection was there, you could practically drive upon it before seeing it." It is also clear from the record that appellants were very familiar with the crossing and we think should have realized the dangers thereof. Appellants' superintendent testified that he had an idea it happened at the intersection and that he "was kind of afraid that that was where it was."

In Page v. Scaramozi, Tex.Civ.App., 288 S.W.2d 909, 911, er. ref., N.R.E., it is stated:

"The conflicting evidence presented a jury question, because 'A plaintiff's right to recover cannot be defeated on the theory that he assumed the risk of injury under the doctrine of volenti non fit injuria unless it appears that with full knowledge of the nature and extent of the danger involved to put himself in the way of the particular risk involved as the result of an intelligent choice.' Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60, 64; Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357; Peck v. Peck, 99 Tex. 10, 87 S.W. 248; Dudley & Orr v. Jacobs, Tex.Civ.App., 257 S.W. 315; Juliano v. State, 190 Misc. 180, 71 N.Y.S.2d 474; Connelly v. State, Ct.Cl., 44 N.Y.S.2d 331; Volinsky v. Public Service Coordinated Transport, 5 N.J.Super. 320, 68 A.2d 894; Clark v. Meyers, 173 Kan. 96, 244 P.2d 217."

It is our view that the evidence in this case raised a fact question as to whether the Corbins with full knowledge of the nature and extent of the danger involved put themselves in the way of the particular risk involved as the result of an intelligent choice. See Page v. Scaramozi, supra, and authorities therein cited.

We have carefully reviewed the record in this case and have reached the conclusion that there is ample evidence of probative force in this record to sufficiently support the trial court's implied findings on negligence and proximate cause in this case.

We conclude that venue in this case was sufficiently established in Wood County, Texas, under Section 9a, Art. 1995, V.A.C. S., and that the record sustains the action of the trial court in overruling appellants' plea of privilege. Each and all of appellants' points have been carefully considered and are respectfully overruled.

The judgment of the trial court is affirmed.

CHADICK, C. J., not participating.