**CITY OF AUSTIN, Appellant,**

v.

**Sarah DANIELS, Appellee.**

No. 10642.

Court of Civil Appeals of Texas.

Austin.

March 11, 1959.

Rehearing Denied April 1, 1959.

Doren R. Eskew, City Atty., Robert J. Potts, Jr., C. J. Taylor, Jr., Thomas R. Hunter, Asst. City Attys., Austin, for appellant.

Will Cowan, Arthur Mitchell, Austin, for appellee.

ARCHER, Chief Justice.

This is a slip and fall case. Plaintiff, appellee, alleged that she parked her car in the middle of the 100 Block of East 6th Street in Austin, stepped out of her car on the street side and started around to the curb. She alleged that she slipped on paint placed by employees of defendant, appellant City of Austin, to renew the marking of parking stalls. Verdict and judgment were for plaintiff.

This appeal is founded on five points and are that the court erred in overruling Defendant's First Special Exception to the effect that all of the acts complained of by plaintiff were performed in the governmental function of regulating parking on the public streets; in submitting Issue No. 5 which inquired whether a dangerous condition was hidden and concealed from plaintiff and rendering judgment thereon, because the uncontroverted evidence showed that the condition of the street was open and obvious and was observed by plaintiff; in submitting Issues Nos. 6 and 9 which inquired whether the failure to place warning devices was negligence; in submitting Issues Nos. 3, 7, 10 and 14 inquiring if the various acts of negligence of defendant were the proximate cause of plaintiff's injuries, because the uncontroverted evidence was that her condition is due solely to pathological conditions already existing within her body and that the judgment for $5,000 is grossly excessive.

The City filed its Motion for Summary Judgment and in support thereof said that the act of the City complained of is an act undertaken and executed in discharge of its police powers and that no genuine issue as to any material fact is raised. This motion was overruled.

Appellant takes the position that all of the acts complained of were performed in the governmental function of regulating parking on the public streets and that its First Special Exception should have been sustained.

The City has the right to regulate or even prohibit parking on a street. The principal purpose of a city street is to furnish a place or way for public passage of traffic on foot or in vehicles transporting persons, or moving property, and as incident thereto, the right to load and unload passengers, merchandise and other commodities. The City has the authority to establish and maintain parking meters as a police regulation and a governmental function.

Harper v. City of Wichita Falls, Tex. Civ.App., 105 S.W.2d 743, er. ref.; City of Abilene v. Woodlock, Tex.Civ.App., 282 S.W.2d 736, er. ref.

The prime question to be determined in this case is: Are the means for regulating "the place" for parking (i. e. lines for parking stalls) at such meters also a governmental function?

The Austin City Code provides:

"On those street which are marked off with parking stall lines, the driver of a vehicle shall park within the limit lines allocated for each vehicle."

It is to be seen from reading the Ordinance that no distances are given as to the dimensions of the "stall", but the driver is told to park within the limit lines allocated. The parking stalls are parallel to and adjacent to the sidewalk, or south curb of East 6th Street and the parking meters. The employees of the City from time to time as the stripes become worn, repaint them.

For the purpose of appellant's Assignment No. 1, directed to the overruling of its Special Exception, it may be assumed that the painted area, the condition created by the employees of the City, on the occasion, was unsafe, dangerous and hazardous to the plaintiff, placing a duty upon the defendant to warn the plaintiff.

There is no contention by the appellee but that the City is granted immunity from tort liability for the acts which would otherwise be actionable, because of a policy, interests of social importance which the City represents, and other reasons coming down from the common law, and this immunity has been recognized by our courts.

Prosser, On Torts, 2nd ed. 774; Barnett "The Foundations of the Distinction Between Public and Private Functions", 1937, 16 Or.L.Rev. 250; Parson v. Texas City, Tex.Civ.App., 259 S.W.2d 333, er. ref.

■ However, an exception to such immunity exists when a City creates or maintains a nuisance in connection with a governmental function, and therefore, if the plaintiff has in fact alleged that the City created or maintained a nuisance, a cause of action has been alleged and there was no error in overruling the Motion for Summary Judgment and in overruling the Special Exception.

Wiggins v. City of Fort Worth, Tex.Civ. App., 299 S.W. 468, affirmed, Tex.Com. App., 5 S.W.2d 761.

■ A nuisance can exist only where there is an unlawful invasion of the rights of others and a "nuisance" covers many varied situations and is difficult to define.

Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W.2d 565.

■ We recognize the rule that the doctrine of nonliability is strictly construed against the municipality.

City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010, 26 A.L.R.2d 935.

The distinction between governmental and proprietary functions is based on the function and activity participated in by the City. Certain functions can be performed adequately only by the government; there could be no liability on the part of the City for failure to enact ordinances, or torts committed by its police, firemen, hospital employees, administrators of quarantine or sanitation laws, public school employees, employees of public charities, garbage collection, etc. engaged in by the City generally.

City of Houston v. Wolverton, 154 Tex. 325, 277 S.W.2d 101.

■ However, when a City performs a service, or engages in an activity which might be as well provided by a private corporation, the function is deemed a proprietary one, and there may be liability, and the City liable for torts arising out of activities such as supplying water, gas or electricity, etc.

The construction of streets or other public improvements as well as the construction, maintenance and operation of streets, sidewalks and sewers are generally considered and treated as proprietary functions.

19 McQuillen, Municipal Corporations, 3rd ed. 77; City of Houston v. Shilling,

supra; City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326, 52 A.L.R.2d 680.

There are many cases involving the liability of a city for injuries caused by holes in the sidewalk, obstructions left in streets, obstructions created or allowed to be created in public streets, but we have not been cited a case dealing with painting parking stripes in the street.

■■ As a general rule the regulation and control of traffic in and by a City is strictly a governmental function; however, it is generally agreed that it is the duty of a City to post such directing and warning signs at the site where construction or improvements are being made as are reasonably necessary to protect users of the streets from danger incident to such construction or improvements.

Appellee takes the position that the activity of the City employees in painting the stripes is not related to the "repair and improvement of streets" within the meaning of that general rule, but that if the activity in the instant case does not fall within the "repair or improvement of streets", that the City would be liable on the theory of the case of Crow v. City of San Antonio under the pleadings in this case and the findings of the jury, because the City failed to maintain that segment of East 6th Street, where the accident occurred, in a reasonably safe condition for ordinary use by pedestrians.

In the case of Crow v. City of San Antonio, Tex., 301 S.W.2d 628, our Supreme Court, citing many cases, held that the City was liable for placing a rope across Taylor Street so as to close it to vehicular traffic without placing proper warning signs to apprise the traveling public of the presence of the rope, which created an obstruction or dangerous hazard due to the difficulty of the ordinary observer being able to notice it.

In response to issues submitted, the jury found that the plaintiff slipped and fell in the wet paint placed on the street by the employees of the City, and that the placing of the paint, under the circumstances, was negligence and a proximate cause of the injuries sustained; that the placing of the wet paint, under the circumstances, created a dangerous condition to pedestrians using the street, that such condition was hidden from plaintiff, that the failure to place any warning device to warn members of the public of the dangerous condition was negligence and a proximate cause of the injuries to plaintiff; that in putting wet paint on the street, under all of the circumstances, rendered that portion of the street in a condition that was not reasonably safe for use by the public; that the failure to place warning devices to warn the public and the plaintiff of the unsafe condition of that portion of East 6th Street was negligence and the proximate cause of the injuries to the plaintiff; that the placing of the wet paint on the street, under the circumstances, created an unsafe condition, and that such condition was allowed to exist immediately prior to the transaction in question, and that such was negligence and a proximate cause of the injuries to plaintiff.

The jury found that the plaintiff exercised ordinary care and kept a proper lookout.

The jury found that the damages sustained was not the result of an unavoidable accident and fixed the plaintiff's damages at $5,000.00.

We believe that the findings of the jury are supported by the evidence and that the charge submitted the questions to be determined correctly and that the damages awarded are not excessive.

The evidence as to the painting of the stripes, the condition created and the failure to place any warning signs is not in material conflict.

The employees whose duty it was to paint the stripes testified as to the manner of application, time to harden, its general appearance; that the paint does not dry all at once, but from the outside in; that there

is not much difference between the looks of paint that is freshly put down and paint that has dried out; that a crust would form on the paint in ten minutes and that it begins to dry as soon as it is put down and there is no pick-up under traffic in 45 minutes; that the stripes are 3½ inches wide and 7 feet 9 inches across the area; that the "T" is 3 feet and 9 inches long; that no warning signs were put up.

Paul Hohertz, an employee of the City for 11 years and foreman of the painting crew, testified as to the manner of painting the stripes and of the use on occasions of little cones set on the line as a warning device to keep cars from running over the fresh paint; that no type of warning devices are used to warn pedestrians of wet or fresh paint; that he and his crew painted parking stalls in the first block on East 6th Street; that the paint was put down wet, and one stepping on the painted area would slip.

Jack Morris, an employee of the City and one of the painting crew, testified that they began work at 10:20 a. m. on the parking stalls and began on the south side of the first block on East 6th Street; that the paint used had a chemical in it that dries faster; that the paint dried from the outside in and would begin to harden on top and if you looked at it, it would look like it was dry but that the paint would not be dried for 30 minutes, and that one who was not acquainted with the paint would not be able to detect the difference between paint that had been laid 7 minutes or 15 minutes; that 30 minutes time would be required for the paint to dry completely.

Sarah Daniels, the plaintiff, testified in person that she was 43 years old, a widow with three children, ages 8, 9 and 16 years, all girls; that she did maid work and ironing; that on or about January 9, 1957 she fell down when attempting to put her nickel in the parking meter on East 6th Street; that she found a parking place on East 6th Street, parked her car, got out and in going around the back of the car to put her nickel in the meter, and as she reached up on the sidewalk, and all she knew, her feet came out from under her and down she came; that the fall was the hardest fall she ever had; that she had paint on her clothes and her stocking was torn; that she looked and the paint did not appear to be slick; that a man (Mr. Mecey) assisted her to get up and she went to a nearby store to make a purchase and returned and got in her car and started home; that she found that her clothes were soiled as she began menstruating and that they were also soiled with paint and that she went home and changed clothes; that she began to get sick and called the Water & Light Department and talked to a Mr. Potts, who told her if she was hurt to go to a doctor; that she went to bed and stayed the rest of the evening and was hurting all night; that the next morning she went to Dr. Celine Heitzman at the Holy Cross Hospital and that she was in pain and asked for medicine; that Dr. Celine gave her some pills and recommended that she stay at the hospital but she could not stay because she did not have any money and the little girls were at home; that she had vaginal bleeding; that she looked where she was going and where she was walking and that she did not see anything at the parking stall to warn her that the paint was wet or slippery; that she continued to feel pain and discomfort.

The plaintiff was operated on in February for thyroid trouble and that after the fall she had constant pain but continued to work but was getting worse all the time.

The witness went to see Dr. Samuel P. Todaro, who examined her and wanted to put her in the hospital but she did not go because of lack of funds and because of her children. She testified that she continued to work although in great pain but that she had not worked as much as before the injury; that she still worked some and gave the amount of her wages before and after the accident.

On cross examination the plaintiff testified as to her earnings and the time she

worked, as to an operation for thyroid, as to the extent of her injuries and as to pain suffered and as to leg cramps; that she made over $40 a week before the accident and about half as much since.

Robert S. Mecey, owner and operator of a shoe shop at 125 East 6th Street, testified that he saw the accident; saw the plaintiff come around her car and step on the wet paint, and that she hit the street, the pavement; that she fell down pretty hard; that the accident occurred in the first parking stall to the east of the alley and of his place; that the street slopes to both sides; that he saw the painter across the street painting and after the woman fell he realized the paint was wet; that the woman left her shoe print there in the paint.

After the woman fell the witness said he went to her as she was getting up and asked if she was okay and she said "I think so" and went down the street east; that the woman fell all the way to the ground and fell hard; that there were no warning signs or barricades of any kind near the place where Sarah Daniels fell giving warning of the fresh paint.

Dr. Todaro testified that he first saw Sarah Daniels on the 20th of February, 1957, and that she gave a history of having a fall on January 9, 1957 and that immediately after the fall she began a vaginal bleeding and that this had continued with pain in the pelvic, in her back and lumbosacral area and that he sent her to a radiologist for X-ray diagnosis; that he gave her a complete examination; that she had a stain in the mouth of the uterus and gave a detailed description of this organ and its functions; that the X-rays did not show any broken bones; that he saw Sarah Daniels three or four times in the first part of 1957 and in October 1957 and gave a suggested treatment, and in response to an extensively worded hypothetical question detailing the claimed injuries, the doctor answered that such a fall would precipitate the bleeding and the patient needed medical attention and gave a lengthy explanation of

post-menopausal bleeding and in many cases malignancy of the genital tract.

Dr. Celine Heitzman testified that she saw Sarah Daniels in January, 1957, who said she had fallen on the pavement and hurt her right side and thigh and that her head was hurting and that she had passed her menopause several years before and that she had started bleeding. The doctor recommended that the patient go to the hospital but she would not; that the doctor believed that the fall brought about the bleeding.

There were other witnesses who testified that Sarah Daniels had worked for each of them as a maid before and after the accident but less after the injuries.

The testimony is long, almost 500 pages in the statement of facts, which we have read, but we would not be justified in attempting a review of the entire record. We believe what we have set out supports the jury's findings and, of course, the jury saw and heard all of the witnesses and resolved the facts in favor of appellee.

■ Having concluded from the findings of the jury that the placing of the paint in the manner that it was put down created a nuisance, we then decide if the condition so created was too trivial for reasonable minds to differ as to whether or not the City ought to have anticipated an accident of the type that occurred. We do not believe that the condition was of such a trivial nature. The area covered by paint was of considerable size as hereinabove stated.

The case of City of San Antonio v. Chabot, Tex.Civ.App., 318 S.W.2d 485, writ pending, is the latest discussion and finding on the question of triviality of a defect in a sidewalk, in which case the City was absolved from liability. However the painted lines in our case were in a place and manner that were well known to and used by the public.

Appellant takes the position that since the condition of the street was open and

obvious and in fact observed by plaintiff, that the City had no further duty to the plaintiff, and that, as a matter of law, any person should have appreciated that the newly laid paint was probably slick and that plaintiff voluntarily walked on it in its then condition when she knew or should have known that it was hazardous to do so.

No issue was requested or submitted on the question of assumed risk.

 Special Issue No. 15 inquired if the plaintiff failed to keep a proper lookout which was answered in the negative. It is incumbent on the plaintiff, in an incurred risk case, to prove not only negligence, but also a breach of duty, i. e. that the condition was hidden, giving rise to the duty to warn.

33 Tex.L.Rev. 1; 1 Baylor L.Rev. 410; McKee v. Patterson, 153 Tex. 517, 271 S. W.2d 391.

The City had the duty to keep the street in a safe condition and free from dangerous and concealed defects, and this the jury found it did not do by its answers to the issues on this point.

The duty imposed on the City is not only to not obstruct a street for vehicular traffic, but also it owes a duty to such traffic and to pedestrians using a street, to maintain its streets in a reasonably safe condition.

56 A.L.R.2d 1404 (Liability of City) [a] Negligence generally.

Complaint is made to the form of Special Issues Nos. 3, 7, 10 and 14 in employing the word "injuries". No objection was made to these issues and error was not assigned in the motion for a new trial. The complaint now is that all of the uncontroverted evidence was and, as a matter of law, is that appellee's condition was due solely to pathological conditions already existing within her body.

We have heretofore discussed the evidence and will not recite it again, believing that the answers of the jury find reasonable support therein.

Michalak v. Dzierzanowski, Tex.Civ. App., 270 S.W.2d 276.

We do not believe that the verdict for $5,000 in this case is so excessive as to require a reversal of the judgment in view of the evidence as to appellee's injuries, pain, suffering and loss of earnings, hospital, doctor and drug bills incurred and to be incurred in the future.

Thompson v. Goode, Tex.Civ.App., 221 S.W.2d 569, er. ref.; 4 McDonald, Tex. Civ.Prac. 1459.

The judgment of the Trial Court is affirmed.

Affirmed.