**HUMBLE OIL & REFINING COMPANY,
Appellant,**

v.

**John David WHITTEN, Appellee.**

No. 278.

Court of Civil Appeals of Texas.

Tyler.

April 27, 1967.

Rehearing Denied May 25, 1967.

288

Thompson, Knight, Simmons & Bullion, John A. Gilliam, Dallas, for appellant.

Smith, Johnson & McDowell, Howard Smith, Sulphur Springs, Woodrow Edwards, Mt. Vernon, Ivan Alexander, Jr., Emory, for appellee.

SELLERS, Justice.

Appellee John D. Whitten filed this suit against appellant Humble Oil & Refining Company to recover for personal injuries received by him while working for Delta Drilling Company. Appellee recovered compensation insurance as an employee of Delta Drilling Company, his employer, and brought this suit against appellant for appellant's negligence in connection with his injuries. In this suit, Delta Drilling Company's insurance carrier sought subrogation for the amount it had paid appellee.

The trial was to a jury and resulted in a judgment for appellee in the sum of $60,-000.00. From this judgment, the appellant has duly prosecuted this appeal. While appellant has some thirty assignments of error,

it makes this statement on page 2 of its Brief:

"This appeal presents essentially two questions for this Court's consideration, to-wit:

"(1) Does the conduct of appellant in furnishing a tank to Appellee's employer without a ladder or gauge constitute actionable negligence?

"(2) Could such conduct, if negligence, be a proximate cause of Appellee's fall from the ladder?

"It is Appellant's position that the evidence failed to raise any issues of fact as to negligence or proximate cause in this case, and that the trial court thus erred in submitting such issues to the jury, and entering a judgment for Appellee based upon the affirmative answers thereto."

Humble Oil & Refining Company and Delta Drilling Company entered into a contract dated January 12, 1962, in which it was agreed that Delta Drilling Company, as independent contractor, would drill an oil well for Humble Oil & Refining Company, known as its Grimes No. 1 in Rains County, Texas. The contract was a rotary drilling contract in which Delta agreed to drill the well and Humble agreed "to furnish all mud conditioners necessary for drilling and completing the well. Humble will arrange to purchase all necessary mud conditioning materials."

Humble's Field Superintendent, W. T. McGarrahan, had 37 years' experience with his employer and was supervising the drilling of the Grimes No. 1. As a part of his duties, he picked out and had delivered to the well site a portable steel tank approximately fifteen feet high owned by Humble to be used for the storage of the mud additive which was to be purchased and furnished by Humble. He inspected the tank before ordering it delivered. He noticed that it did not have the steel ladder attached to it although the tank did have brackets welded to it for this purpose. He also noticed that the tank was not equipped with a gauge by which the fluid level of the storage tank could be determined from ground level although this type gauge could be purchased at a low cost from any oil well supply company. Mr. McGarrahan also testified that he knew the tank was to be used in storing the mud additive; that the fluid level in the tank would have to be determined occasionally and that the only way to determine the fluid level was to climb on the top of the tank and look downward through a hole. There was no evidence to the contrary. When checking the drilling of the well after the tank had been delivered, he noticed the wooden ladder in question leaning against the tank.

Appellee Whitten was a "roughneck," a member of one of three daily crews which Delta employed in carrying out its drilling contract. A "roughneck" has been defined as a laborer who, under the supervision and direction of a superior known as a driller, engages in "rigging up," or installing and operating drilling rigs in the search and exploration for oil and gas. This roughneck was injured on the job in attempting to carry out his driller's instructions to assist the driver of a tanker truck owned by Robertson Tank Line, Inc., another independent contractor of appellant, in unloading diesel oil additive which was being delivered from Humble's Baytown Refinery to the well site. The diesel oil was being unloaded into the storage tank furnished by Humble when Whitten was requested by the driller to check the level of fluid in the tank as it was being filled. The only method available to the appellee to do this was to climb to the top of the tank using the wooden ladder. It was about three o'clock A.M. and dark. Before mounting the wooden ladder for the first time, appellee checked the ladder with his flashlight, then secured the ladder at the bottom by placing it between a crack between two planks in the wooden flooring. When he shined his flashlight upward, he noticed a small rope at the top of the ladder which appeared to secure the

ladder at the top, but, in fact, the line was not attached to the tank. Appellee climbed the ladder but when he attempted to step from the top of the ladder onto the top of the storage tank, the ladder slipped and he fell some fifteen feet to the plank flooring occasioning severe injuries to himself. No issue as to damages is made on this appeal.

A Delta employee, Turner, testified that ordinarily storage tanks like the one here usually come equipped with a steel ladder or gauge, and he requested of his superior that a steel ladder be furnished so that it could be attached to this tank. None was furnished. Since there had to be some means of climbing to the top of the tank to observe the fluid level, Turner built a wooden ladder for that purpose. He had attached what he calls a "soft line" to the top of the ladder but left the line loose on top of the tank because there was no secure place to tie it to the tank.

In response to Special Issues Nos. 1 through 6 concerning primary liability on the part of appellant, the jury found Humble's failure to equip the tank with a steel ladder rendered it unsafe for plaintiff Whitten for use in his employment; this failure was negligence and a proximate cause of plaintiff's injuries; Humble's failure to equip the tank with a gauge in order that its fluid level could be determined from the ground rendered the tank unsafe for use in plaintiff's employment; and that this failure was negligence and a proximate cause of plaintiff's injuries. The jury further found that plaintiff did not have full knowledge of the ladder equipment on the tank; he did not appreciate the danger of climbing the ladder in question; and he did not voluntarily expose himself to such known and appreciated danger in climbing the ladder. The jury also found the accident was not unavoidable and acquitted plaintiff of any contributory negligence in other special issues.

 Humble first contends that the judgment should be reversed and rendered because the contract between it and Delta did not expressly recite that Humble would supply a tank to store the mud additive which it would purchase and supply to the well site. It is true that the contract does not expressly require Humble to furnish a storage tank but we believe the duty is there by necessary implication. There is no evidence to the effect that Humble could keep a supply of mud additive at the drill site other than by storing it there in a tank. In any event, Mr. McGarrahan recognized it was Humble's duty to supply a storage tank for this purpose and he did arrange for delivery of a Humble tank to the well site, knowing that it was to be used for storage of the mud additive to be furnished by Humble. The practical construction given the contract by the parties is the best evidence of the intention of the parties at the time the contract was made. American Manufacturing Company of Texas v. Witter, Tex.Civ.App., 343 S.W.2d 943 (writ ref., n. r. e.) ; Anchor Casualty Co. v. Robertson Transport Co., Tex.Civ.App., 389 S.W.2d 135 (writ ref., n. r. e.) ; Danaho Refining Co. v. Dietz, Tex.Civ.App., 398 S.W.2d 307 (writ ref., n. r. e.). This point is overruled.

██ Appellant next contends the judgment should be reversed and rendered because it had no duty to furnish to Delta and its employees a storage tank which had a steel ladder affixed, or a gauge by which the fluid level in the tank could be ascertained from the ground level. The fact situation here reveals either or both a bailment for hire or a bailment for the mutual benefit of the parties. The same rule is applicable in both situations. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99; Ellis v. Moore, Tex., 401 S.W.2d 789. Since Humble recognized its obligation to furnish a tank for the storage of the mud additive to be used in drilling the Grimes No. 1, it can only be concluded that Humble was supplying the storage tank to the well site for its own business purposes, although this chattel also served Delta's business purposes. The undisputed fact that Humble did furnish the tank for

its own business purpose carries with it the legal obligation to use ordinary care in making the chattel safe and forestall personal injury to the servants of an independent contractor who is using the chattel in accordance with the purposes for which it was supplied. Roosth & Genecov Production Co. v. White, supra.

 The jury's findings of primary negligence on the part of Humble because of its failure to equip the storage tank with a steel ladder or gauge are supported by sufficient probative evidence. Likewise, the jury's findings that the accident was not unavoidable and that plaintiff was not contributorily negligent are amply supported by the evidence.

Appellant further contends as a matter of law that appellee is barred from recovery because appellee assumed the risk of any danger arising from his use of the storage tank, and that the lack of an attached steel ladder or gauge on the tank was as open and obvious to appellee Whitten as it was to Humble when the tank was delivered. At the trial, Humble also asserted an affirmative defense that at the time of the accident, the condition of the tank was "open and obvious" to appellee. The jury's findings to the contrary are supported by the evidence.

 It appears from the instant facts that the condition of the tank had been changed from the time it was delivered to the well site to the time appellee Whitten first used it on the occasion of his accident. Appellee had no occasion, prior to his initial climbing of the ladder, to have noticed in particular the condition of the tank and dangers presented by it when it was delivered. He had no previous experience with the condition of the tank as had appellant and cannot be charged with equal knowledge of the condition of the tank when first delivered. Appellee can only be charged with assuming the risk of the condition of the tank at the time he first climbed it on the night of the accident. Assumed risks, or the doctrine of volenti, at the time of the

delivery of the tank is not applicable to appellee Whitten. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60.

 We must agree, because of recent Supreme Court authority, that the "assumed risk" doctrine is a relatively harsh one and the rules allowing its applicability are not to be relaxed. Since appellant has not adduced evidence reflecting that appellee should be charged with knowledge, as a matter of law, of known and appreciated danger, and has secured no jury findings to this effect, then we must hold that plaintiff was not barred from recovery by the "assumed risks" doctrine. Ellis v. Moore, supra; Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368.

 It would appear to this Court that the rule and the recommendation of decisive authorities is that cases analagous to the instant case should be determined on the basis of negligence and contributory negligence. Robert E. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Halepeska v. Callihan Interests, Inc., supra; Ellis v. Moore, supra. We quote briefly from the last cited authority:

"* * * Generally speaking, cases should be determined on the basis of negligence and contributory negligence. Our disposition is not to extend the doctrine of assumed risk so as to excuse negligent conduct on the part of the defendant. As above indicated, it is a harsh doctrine, and we are not disposed to relax the rules set down for the escape from liability under it. * * *"

The trial court correctly followed this recommended procedure. Appellant's points concerning assumed risks are overruled.

 Appellant further contends as a matter of law that even though it might be held negligent in supplying the storage tank without a steel ladder or gauge, such negligence cannot be held a proximate cause of appellee's accident because its supplying of

a defective chattel was a remote cause of his accident. Appellant adduced evidence that a Delta employee changed the condition of the tank by building the wooden ladder supplied for use in climbing to the top of the tank, making it appear to appellee that the top of the ladder was secured to the top of the tank by rope. Appellant contends this negligence was the immediate cause of plaintiff's accident. However, Humble's negligence continued to the time of plaintiff's injury since Mr. McGarrahan testified that on later checking the drilling progress, he noticed a wooden ladder leaning against the tank which obviously was the only means to be used in climbing to the top of it. Appellant makes the further contention that it cannot be held responsible for later negligent acts on the part of Delta or its employees after the tank had been delivered to the well site. We overrule these points. All relevant evidence uniformly points up that appellant knew the top of the tank must be attained before the fluid level could be known. Appellant did not supply a safe means to get on top of the tank and certainly it could reasonably foresee that Delta's employees had to use some method to do this. It is not required that appellant should be able to reasonably anticipate the exact manner in which appellee was injured. It is enough for appellee to adduce probative evidence to the effect that an accident such as occurred was likely to happen as a direct result of appellant's original negligence. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359; Port Terminal Railroad Association v. Ross, 155 Tex. 447, 289 S.W.2d 220; Motsenbocker v. Wyatt, Tex., 369 S.W.2d 319.

▇▇▇ The fact that Delta was guilty of negligence in failing to provide appellee Whitten a safe place to work and in providing the wooden ladder as well as the untied rope (which appeared to be tied) for plaintiff's use on the occasion of his serious accident is of no moment in considering appellant's liability. The appellee may still recover even though appellant's prior negligence combined and concurred with Delta's

in proximately causing his injuries. Biggers v. Continental Bus System, supra; City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326, 52 A.L.R.2d 680; Texas Power & Light Co. v. Holder, Tex.Civ.App., 385 S.W.2d 873 (writ ref. n. r. e.) and 393 S.W.2d 821.

We are of the opinion that this case comes squarely within the rule laid down in Ellis v. Moore, supra. There, the injured party was supplied with a tractor with a handle broken off one of its power lifts—nothing inherently dangerous about the tractor as such—but when placed in use for the purpose of killing Johnson Grass by Ellis, who tried to use the other power lift without knowledge that in doing so the tractor would turn over on him and cause his injury.

In the case before the Court, appellant Humble Oil & Refining Company supplied a tank for the purpose of storing the mud for use in the drilling of its oil well. Although the tank was built with brackets on it to which a steel ladder could be attached, no ladder was attached—nothing inherently dangerous in the tank as such—but when appellant undertook to fill this tank with mud for use in drilling its well, Humble knew that someone had to get on top of this tank some way in order to gauge the flow of mud into the tank. That is when Delta's employee (not the appellee), in order to accomplish this purpose, asked for a steel ladder but none was furnished. He built the wooden ladder and tied the rope to the top of the ladder but was unable to tie the rope to the tank. Appellee, when he for the first time, at three o'clock in the morning, thinking the rope was tied to the tank at the top, climbed the ladder and when he reached the top of the tank and went to get off on to the same, the ladder slipped from under him and he fell to the floor receiving the injuries for which he sued. Had the steel ladder been attached to the tank after it was delivered to the well site, no injury would likely have occurred. We can see no legal distinction in the two cases.

The judgment of the trial court is affirmed.