**SOUTHLAND PAPER MILLS, INC.,**
**Appellant,**

**v.**

**Loice A. RHOADS et al., Appellees.**

**No. 6992.**

Court of Civil Appeals of Texas.
Beaumont.

Affirmed Oct. 31, 1968.

Rehearing Denied Nov. 27, 1968.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, Chilton O'Brien, Keith, Mehaffey & Weber, King, Sharfstein & Rienstra, Beaumont, for appellant.

Joe H. Tonahill, Jasper, for appellees.

PARKER, Justice.

Loice A. Rhoads sued Southland Paper Mills, Inc. and several railroad companies seeking damages for injuries occurring as a result of an alleged fall by plaintiff Rhoads from a railroad tank car leased to Southland Paper Mills, Inc. Plaintiff Rhoads alleged that Southland Paper Mills, Inc. was negligent in several particulars. Southland Paper Mills, Inc. filed a plea of privilege to be sued in Angelina County, Texas, its residence, which, upon hearing, was overruled. Plaintiff Rhoads will be called appellee. Southland Paper Mills, Inc. will be called appellant.

The trial court filed no findings of fact or conclusions of law. In appellee's petition, he alleged Southland Paper Mills, Inc. was negligent in many ways, "which negligence was a proximate cause of the injuries and damages suffered by the plaintiff, whether singularly, concurrently, or in combination thereof, to wit," followed by particular allegations which are attacked on evidence points as set forth in appellant's points of error hereinafter set forth.

Appellant, by its points of error numbered below, contends the trial court erred in overruling appellant's plea of privilege because there is no evidence to support:

1. the Trial Court's implied finding that Appellee fell from Tank Car No. SHPX 20229.

2. the Trial Court's implied finding of negligence against this Appellant that the dome lid or gasket on Car No. SHPX 20229 was defective.

3. the Trial Court's implied finding that Appellant failed to inspect Car No. SHPX 20229 and failed to repair the same.

4. the Trial Court's implied finding that Appellant overloaded Car No. SHPX 20229.

5. the Trial Court's implied finding that Appellant failed to ship the substance being shipped in a tank car which was suitable for the purpose for which it was being used.

7. the Trial Court's implied finding that there was a violation of the Safety Apliance Act, 45 U.S.C.A., Sec. 11.

8. the Trial Court's implied finding that any conduct of Appellant was in any manner a proximate cause of the injuries occurring to Appellee.

These no-evidence points will be considered together.

Considering the evidence favorable to and supporting the judgment of the trial court, these no-evidence points will be considered and determined. Appellee, in his petition, alleged he sustained injuries while working within the course and scope of his employment at East Texas Pulp & Paper Company in Evadale, Jasper County, Texas. Appellee was in such employment on or about November 18, 1963. He was a pipe fitter unloading tank cars loaded with soap, performing that task when injured on or about November 18, 1963. During November, 1963, Eastex purchased a chemical compound known as sulphate black liquor skimmings or "soap" from appellant, transported to Eastex by tank cars *leased* by appellant from Shippers Car Line. Appellant loaded the substance and shipped it from its plant in Angelina County, Texas via the lines of Angelina & Neches River Railroad Company, Texas & New Orleans Railway Company, a subsidiary of Southern Pacific Railroad Company, and by Gulf, Colorado & Santa Fe Railway Company, these companies being defendants in the trial court. During November, 1963, Eastex received several tank cars from appellant loaded with this soap. The records of Eastex show the only tank car loaded with soap delivered to Eastex and unloaded by it during the period of time from November 11, 1963 to November 21, 1963 was the tank car No. SHPX 20229. This tank car was received by Eastex on November 15, 1963, unloaded and left on November 18, 1963. Appellant admitted that the tank car No. SHPX 20229 was under its control and use when it sold Eastex the tank load of the soap shipped from Southland Paper Mills, Inc. at Herty, Texas on or about November 15, 1963. After such a tank car is spotted at the Eastex plant, to empty the tank a hose is attached to the bottom of the car. The workman must then climb on top of the car to open the dome lid and then open a valve inside the tank. The lid is secured by "wing-nuts" which are loosened and then dropped back. The lid is 16 or 18 inches in diameter, requiring a 24 or 18 inch wrench to loosen the nuts. On or about November 11, 1963, appellee was directed to unload the tank car in the Mill which had been loaded with soap. The dome lid had to be lifted with both hands, was heavy,

and appellee had to use his strength to put it up. When opened, the lid is slanted about ⅔ downward with the weight below. Appellee climbed upon the tank car by pulling himself to the top of the car itself in order to get to the lid and in a position to use both hands and use his strength on the lid. He could not reach the lid to perform this task from the running board below the dome, but climbed on top of the car in order to get to the lid. The lid could not be opened from the small walkway. This car was dusty. As appellee exerted his strength to pick up the lid, his foot mashed down into a soft substance. He slipped, hit the small walkway, turned around, and fell beneath the car onto the tracks. When he hit the tracks, soap was over him ond on his shoes. Where he had been standing on top of the tank car it did not look slippery because of the dust. He immediately reported the fall to his supervisor, Mr. Whitmire, which was verified by the latter.

The car from which he slipped was not equipped with a walkway so located on the dome to permit him to stand and perform the work above detailed. There were no hand rails. If there had been such equipment on the tank car, according to Mr. Whitmire, appellee would not have fallen off the tank car.

The dome lid on the car from which he fell did not have a gasket. (This is undisputed.) Without a gasket there was nothing to prevent the leaking of soap out of the tank car when it was stopped or received the slamming, backing, and shoving movements the tank car would undergo in the switching processes. Numerous switchings of the car after leaving appellant's plant were shown by records. Soap was on the tank car covered with dust. It was slippery. By looking there was no indication that it was sloppy or slippery—you have to get into it. Dust will obscure the soap. There is evidence that the only manner in which soap could get out of the top of the tank car would be a defective gasket or the lid not tightened down properly. This tank car did not have a gasket. Lack of a gasket of any kind is the maximum defect of a gasket as a safety appliance to prevent the leaking of a liquid in a tank car where the liquid is sloshed by starting and stopping.

In evidence is a photograph of the tank car SHPX 20229, offered in evidence by appellant. This shows a tank car with a dome. At the bottom of the dome is a running board parallel to the ground some three feet long and three inches wide. There are no hand rails which would prevent a workman from falling to the ground. Both appellant and appellee have cited the case of Shields v. Atlantic Coast Line R. Co., 350 U.S. 318, 76 S.Ct. 386, 100 L.Ed. 364. On page 391 of 76 S.Ct. on page 369 of 100 L.Ed., the Supreme Court of the United States held:

> If a dome running board is provided by the railroad or the makers of the car and used by the railroad as an appliance necessary for the use of the car, it must be a safe board as required by § 2. Cf. Texas & Pacific R. Co. v. Rigsby, 241 U.S. 33, 37, 36 S.Ct. 482, 483, 60 L.Ed. 874 [876].

Under headnote 8 of such opinion, the court held, and appellant in its brief admits, that as the lessee of the car under its control and management, it owed a duty to appellee under the Safety Appliance Act to provide a tank car equipped so that a worker may perform his work of unloading with safety.

This court further held that a dome running board is of major importance in loading and unloading operations. The appellee had the duty of unloading this tank car. The regulations of the Interstate Commerce Commission, setting out the standards of safety for tank cars, require the dome to be surrounded by a safety rail and a platform with sufficient length to provide access to all operating fittings with the safety railing being adequate to enclose the operating platform, manway, and fittings used in the loading and unloading of the tank car. This being the minimum standard, the lack of a safety rail represents

negligence and a reason for appellee's injuries. Mr. Whitmire, who had worked around tank cars for 13 years, testified without contradiction that appellee would not have fallen had there been a safety railing. The board near the dome would not permit a workman to get behind the lid and lift it toward the front or back of the car.

There is no evidence the car was overloaded, but appellant's fourth point of error is overruled because the trial court did not have to make a finding that it was overloaded to render its judgment maintaining venue in Jasper County.

There is no direct evidence that appellant did or did not inspect the car before or after loading it, but the lack of proper inspection of the car and failure to repair its defects by appellant was established by circumstantial evidence with the degree of certainty required for an implied finding to that effect by the trial court. Appellant's points of error Nos. 1, 2, 3, 5, 7, and 8 are overruled. Hanson v. Ponder, 300 S.W. 35 (Tex.Com.App.1927); Humble Oil & Refining Company v. Whitten, 415 S.W.2d 287 (Tex.Civ.App.1967); Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W. 2d 352 (1951).

Appellant's point of error No. 6 contends that:

The Trial Court erred in overruling Appellant's Plea of Privilege because the doctrine of res ipsa loquitur is not applicable to the facts of this case for venue purposes.

This point of error is immaterial as the appellee does not have to rely on such doctrine to establish his cause of action and maintain venue in Jasper County. Appellee was authorized to prosecute his suit in Jasper County under Article 1995, Sections 9a and 23, Vernon's Ann.Tex.Civ.St.

Judgment of the trial court is affirmed.